Opinion Issued April 17, 2003


 













In The
Court of Appeals
For The
First District of Texas




NO. 01-01-00523-CR
____________

STEPHEN EDWARD TATRO, Appellant

V.

THE STATE OF TEXAS, Appellee




On Appeal from the 155th District Court 
Waller County, Texas
Trial Court Cause No. 00-07-10358




MEMORANDUM OPINION
          A jury found appellant, Stephen Edward Tatro, guilty of murder and assessed
punishment at 50 years’ confinement. See Tex. Pen. Code Ann. § 19.02 (Vernon
2003). We determine (1) whether the evidence was legally insufficient to support
appellant’s conviction, (2) whether appellant waived his complaint that the trial court
erred by allowing testimony of his alleged failure to follow a bond order, (3) whether
the trial court erred by not allowing appellant to correct alleged “misrepresentations”
made by the State through its witnesses, (4) whether the trial court erred by refusing
to allow appellant to present evidence of the victim’s violent character, (5) whether
the State’s failure to disclose in their entirety exculpatory statements of four witnesses
resulted in harm under Brady, (6) whether the trial court erred by partially denying
his request for funds to retain independent experts, (7) whether appellant was denied
the right to cross-examine the State’s witnesses, (8) whether appellant was denied the
right to bring witnesses and evidence on his own behalf, and (9) whether appellant
was denied a fair and impartial trial because of alleged bias by the trial judges in the
case. We affirm the trial court’s judgment. Facts
          On December 17, 1997, Daniel Duran and his friend, Lino Garza, visited
appellant’s father, Rusty Tatro, to reclaim a travel trailer that Duran had loaned to
Rusty. The travel trailer was located on a large piece of property in Waller County,
along with two mobile homes, another travel trailer, a horse trailer, and a metal shop. 
Appellant lived on this property. Duran and Garza each took his own car to the
property. Upon arrival, Duran told Garza to remain in his car while he went to
inquire about the travel trailer. Garza watched Duran walk towards the travel trailer,
where he was met by Rusty. 
          When appellant learned that Duran was on the property, appellant asked Ray
Pederson, a friend who also lived on the property, for a rifle. After Pederson gave
appellant a high-powered, military-issue rifle, appellant walked to the other side of
the mobile home, out of view. Pederson then heard a gunshot. Pederson did not see
appellant shoot Duran or throw the rifle down, but, after Pederson heard the gunshot,
he saw appellant run into the woods behind the property. The rifle that appellant had
borrowed from Pederson was later found on the property. 
          Garza was still in his car at the time that he heard the gunshot. He then pulled
up to the trailer and saw Duran lying on the ground. Garza immediately left the
property and drove to the convenience store up the road to find a police officer. He
encountered Officer Zatkin and asked for help. Upon entering the property, Officer
Zatkin did not see anyone except Duran, who was lying on the ground and was
bleeding, but conscious. When Officer Zatkin approached Duran, Duran told him that
“Two Bears shot me.” Appellant was commonly referred to as “Two Bears.” When
another investigating officer, Officer Dressel, asked Duran the direction from which
the shot had come, Duran pointed to the area where appellant had been standing
immediately before the shooting. Duran later died as a result of the gunshot wound. 
          Officer White investigated the crime scene. His investigation revealed that, at
the time that Duran was shot, appellant was standing on the porch of one of the
mobile homes on the property, approximately one-and-a-half to two feet above the
ground and 83 feet away from where Duran’s body was found. Dr. Patricia Moore,
the medical examiner who performed the autopsy on Duran, found that a single bullet
had entered Duran’s chest, 20 inches from the top of his head, and had exited his
back, 18 inches from the top of his head. Dr. Moore testified that the direction that
a bullet travels through a person’s body is not necessarily indicative of the angle from
which the bullet was fired because the body’s soft tissues could cause a bullet to
change direction or proceed in a different angle. Accordingly, Dr. Moore concluded
that it was possible that the bullet fired from appellant’s rifle could have caused
Duran’s wound.
          After being arrested, appellant fled to Arizona, and a warrant was issued for his
arrest. Appellant was profiled on the television show “America’s Most Wanted” and
was apprehended by Arizona law enforcement authorities. While being detained for
questioning, appellant again attempted to flee, but was captured shortly thereafter
when he ran into a cactus. Appellant was subsequently extradited to Texas for trial. 
 
Legal Sufficiency 
          In his first point of error, appellant contends that the evidence is legally
insufficient to support his conviction for murder.


 
          “The standard for reviewing the legal sufficiency of evidence to support a
conviction is whether, after reviewing the evidence in a light most favorable to the
verdict, any rational fact finder could have found the essential elements of the crime
beyond a reasonable doubt.” Garcia v. State, 17 S.W.3d 1, 4 (Tex. App.—Houston
[1st Dist.] 1999, no pet.); Banda v. State, 890 S.W.2d 42, 49-50 (Tex. Crim. App.
1994).  
          Appellant argues that the bullet that killed Duran could not have been fired
from the rifle that appellant was holding. Appellant claims that, because any bullet
fired from the rifle that appellant was holding would have had to travel at a
downward angle, and, because the bullet that killed Duran exited Duran’s body at a
higher point than the point at which it entered, the bullet that killed Duran could not
have been fired from appellant’s rifle. By requesting that we make this inference,
appellant asks us to view the evidence in an inappropriate light because we are
required to view the evidence only “in the light most favorable to the verdict.”


 See
Banda, 890 S.W.2d at 49. 
          The record shows that, after Pederson gave appellant the rifle, appellant walked
in front of the mobile home, within range of Duran. Rusty, Garza, and Pederson all 
heard a single gunshot at this time. After Pederson heard the gunshot, he saw
appellant run into the woods behind the property. Duran told Officer Zatkin that
“Two Bears shot me.” Appellant was commonly referred to as “Two Bears.” Officer
White, who investigated the crime scene, determined that appellant was standing
within range of Duran at the time that Duran was shot. Dr. Moore, who performed
Duran’s autopsy, concluded that it was possible that the bullet fired from appellant’s
rifle could have caused Duran’s wound. 
           We hold that the evidence was legally sufficient to support appellant’s murder
conviction. 
          We overrule appellant’s first point of error.
 
 
Waiver of Complaint About Extraneous Bad Conduct

          In his second point of error, appellant contends that the trial court erred by
allowing the State to admit testimony that appellant failed to follow a bond order. 
Appellant claims that (1) the order denying him bail was void and (2) the State’s
presentation of testimony that appellant failed to follow a void bond order was
improper evidence of guilt or of an extraneous bad act. 
          Prior to trial, appellant filed a motion in limine, requesting the trial court to
exclude evidence of extraneous bad acts, although appellant did not specify that he
wished the trial court to exclude evidence of his failure to follow the void bond order. 
At a later pre-trial hearing, appellant specifically objected to the use of evidence of
his failure to follow the void bond order as evidence of an extraneous bad act, and the
trial court overruled this objection, instructing appellant to renew his objection at
trial. Thus, appellant was required to object timely at trial regarding the admission
of this evidence. See Goss v. State, 826 S. W. 2d 162, 168 (Tex. Crim. App. 1992)
(“It is well settled that, regardless of a favorable ruling on a motion in limine, a
defendant must make a contemporaneous objection to sustain the error for appellate
review.”), overruled on other grounds, Barnes v. State, 826 S.W.2d 316 (Tex. Crim.
App. 1994).
 
           Appellant did not renew his objection to the admission of this evidence at trial.
Therefore, appellant waived any error. See Wilson v. State, 7 S.W.3d 136, 144 (Tex.
Crim. App. 1999) (holding that ruling on pretrial motion in limine did not preserve
error because defendant failed to object at trial).
          We overrule appellant’s second point of error.
Denial of Cross-Examination
          In his third point of error, appellant contends that the trial court erred by
allowing the State to “convert” the testimony of certain witnesses into improper
character evidence and by refusing to allow appellant to correct the
“misrepresentations made by the State through the witnesses.” See Tex. R. Evid.
404; Wheeler v. State, 67 S.W.3d 879, 883 (Tex. Crim. App. 2002) (holding that State
may not convert defense facts into character witness through its own cross-examination).
          We review a trial court’s decision to admit or to exclude evidence under an
abuse-of-discretion standard; we will not reverse a trial court’s ruling unless that
ruling falls outside the zone of reasonable disagreement. Torres v. State, 71 S.W.3d
758, 760 (Tex. Crim. App. 2002); Roberts v. State, 29 S.W.3d 596, 600 (Tex.
App.—Houston [1st Dist.] 2000, pet. ref’d).
 
          Appellant first complains that the State used Rusty Tatro’s testimony that
appellant was a “shrewd operator” as a derogatory comment on appellant’s character. 
At trial, the following exchange occurred:
State:Do you remember telling me the other day that your son
was someone who might get the best of someone in a
trade?
 
Rusty:I’d say he’s a shrewd operator. I mean, yeah, not that he’s
a thief but he’s just—he’s a businessman.
 
State:A shrewd operator?
 
          Rusty:          No.
 
State:Well, that’s what you just said, sir, isn’t it?
 
Rusty:What I’m talking about is he’s a good businessman. 

The State did not question Rusty any further about this comment. 
          Appellant did not object at trial that the State was attempting to elicit improper
character testimony. Therefore, appellant waived any error. See Tex. R. App. P. 33.1;
Pinkney v. State, 848 S.W.2d 363, 365 (Tex. App.—Houston [1st Dist.] 1993, no pet.)
(“a failure to object in a timely and specific manner during trial will waive error in the
admission of evidence”). 
          Next, appellant argues that the trial court should have allowed appellant to
cross-examine Ray Pederson, one of the State’s witnesses, about a prior statement that
Pederson had made to the police on December 22, 2001, four days after Duran was
shot. The trial court allowed Pederson to refresh his memory during trial using the
December 22, 2001 statement. When the State asked Pederson specific questions
about what he had said in his prior statement, appellant did not object on the basis of
hearsay. However, on cross-examination, appellant asked Pederson what his prior
statement said, even though Pederson had not testified inconsistently with his prior
statement. The State then objected that the statement was hearsay, and the trial court
sustained this objection, stating:
Counsel, under the Rules he can, [sic] read it to himself to refresh his
memory or he can be impeached by prior inconsistent statements. If
both of you want to do it properly you can do that. 
As the trial court properly noted, Pederson’s statement was inadmissible as hearsay
and was inadmissible for impeachment purposes because Pederson had not testified
inconsistently. Therefore, the trial court did not abuse its discretion by excluding the
statement. See Torres, 71 S.W.3d at 760. 
           Finally, appellant argues that the trial court should also have allowed appellant
to cross-examine the State’s witness, Patricia Barrett, about a prior statement. Like
Pederson, the trial court allowed Barrett to use her statement to refresh her memory,
and the State asked Barrett what she had said in her prior statement. Appellant did
not object on the basis of hearsay. On cross-examination, the trial court allowed
appellant to impeach Barrett on certain portions of her statement when she
contradicted herself. However, when appellant asked Barrett to read from her
statement, but not for the purpose of impeaching her, the State objected that the
statement was hearsay. Again, the trial court properly sustained the State’s hearsay
objection. See id.
          We overrule appellant’s third point of error.
Evidence of Victim’s Violent Character
          In his fourth point of error, appellant contends that the trial court erred by
refusing to allow him to present evidence of Duran’s violent character to show that
appellant was acting in self-defense and to show that Duran was the first aggressor. 
See Tex. R. Evid. 404(a)(2). 
          A defendant who asserts self-defense may present evidence of a victim’s
violent character. Id.; Torres, 71 S.W.3d at 761-62. A victim’s violent character
may be used to show that he was the first aggressor or to show the reasonableness of
the defendant’s fear of danger. See id; Mozon v. State, 991 S.W.2d 841, 845-46 (Tex.
Crim. App. 1999). 
          First, appellant complains that he was not allowed to present fully Duran’s
behavior two days before the shooting, Duran’s actions on the day of the shooting,
or the long-term relationship of appellant and Duran through testimony by Rusty
Tatro, Richard Casper, Ken Young, and Al Barrett. According to appellant, the trial
court prevented him from presenting evidence of Duran’s violent character by
sustaining certain objections by the State. Appellant complains of 13 instances in
which the State’s hearsay objections were sustained, three instances in which the
State’s irrelevancy objections were sustained, one instance in which the State’s lack-of-personal-knowledge objection was sustained, and four instances in which the
State’s leading-question objections were sustained. Appellant’s counsel did not, in
any of these instances, attempt to overcome the State’s objections by, for example,
justifying the admissibility of the testimony under a hearsay exception or by making
a successful argument for the relevancy and necessity of the testimony. See Tex. R.
App. P. 33.1; Forbes v. State, 976 S.W.2d 749, 753 (Tex. App.—Houston [1st Dist.]
1998, no pet.) (“As the party who is offering the evidence, the burden is on the
appellant to establish before the trial judge that the evidence should have been
admitted”). Further, appellant does not even claim on appeal that these rulings were
improperly made. Even if the trial court could have ascertained that appellant was
attempting to elicit testimony to demonstrate Duran’s violent character, nothing in the
record shows that the trial court excluded the testimony for any reason other than the
State’s objections, which appellant does not claim were improper. Therefore, the trial
court did not abuse its discretion by excluding this evidence. See Torres, 71 S.W.3d
at 760. We overrule appellant’s fourth point of error.
Brady Violations
          In his fifth point of error, appellant contends that the State’s failure to disclose
in their entirety exculpatory statements of four witnesses violated Brady v. Maryland. 
Id., 373 U.S. 83, 87, 83 S. Ct. 1194, 1196-97 (1963) (holding that due process clause
imposes affirmative duty on prosecutor to turn over material, exculpatory evidence
upon request). 
          The State violates a defendant’s due process rights when it suppresses evidence
in its possession that is favorable to the defendant after the defendant requests such
evidence. See id., 373 U.S. at 87, 83 S. Ct. at 1196-97. A Brady violation occurs if
(1) the prosecutor fails to disclose evidence, (2) the evidence is favorable to the
defendant, and (3) the evidence is material. Thomas v. State, 841 S.W.2d 399, 403
(Tex. Crim. App. 1992). To prevail on a Brady claim, appellant must show that the
State’s tardy disclosure or its non-disclosure prejudiced him. Little v. State, 991
S.W.2d 864, 866 (Tex. Crim. App. 1999). To demonstrate prejudice, appellant must
show a reasonable probability that, had the evidence been disclosed to the defense,
the result of the proceeding would have been different. U.S. v. Bagley, 473 U.S. 667,
682, 105 S. Ct. 3375, 3383 (1985); Thomas v. State, 841 S.W.2d 399, 404 (Tex. Crim.
App. 1992) (holding test is whether withheld Brady evidence “created a probability
sufficient to undermine the confidence in the outcome of the proceeding”). 
 
          At a pre-trial hearing, appellant requested exculpatory evidence from the State. 
Appellant argues that the State violated Brady by producing only summaries of
statements made by four witnesses, rather than the statements in their entirety. The
witnesses providing statements were Donald Casper, Rusty Tatro, Patricia Barrett,
and Al Barrett, all of whom (1) were present on the night that Duran was shot and (2)
gave statements to the police indicating that Duran had threatened them and appellant
prior to and on the night of the shooting. 
          Appellant argued pre-trial that, under Brady, he was entitled to review and
inspect the statements because they contained exculpatory material relating to
appellant’s defenses of self-defense and defense-of-others and that the State, by
summarizing the statements, inevitably injected its own bias into the wording of the
summaries. The State responded that appellant was not entitled to the full statements
and that the summaries contained all the exculpatory information relevant to
appellant’s self-defense and defense-of-others defenses. The trial court overruled
appellant’s objection, concluding that the State’s response to appellant’s Brady
request was sufficient. Although three of the statements are not included in the
record, from what we can determine by looking at the summaries, the statements
contained exculpatory evidence favorable to appellant’s self-defense and defense-of-others defenses. Because the statements contained exculpatory information, appellant
was entitled to at least a redacted version of the statements. See Ex parte Adams, 768
S.W.2d 281, 290-91 (Tex. Crim. App. 1989). 
          Because only Casper’s statement is included in the record, it is impossible to
conduct a harm analysis regarding the other three statements when we do not know
what additional information the other statements may have contained or whether, if
the trial court had allowed appellant access to the statements prior to trial, the result
of the proceeding would have been different. See Thomas, 841 S.W.2d at 404. 
However, the summary that the State provided regarding Casper was materially the
same as Casper’s statement, which appears in full in the record because it was read
to him outside the presence of the jury to refresh his memory. Accordingly, we hold
that appellant has not shown prejudice with regard to the State’s withholding of any
of the four statements.


 
          We overrule appellant’s fifth point of error.
Independent Experts
          In his sixth point of error, appellant contends that the trial court erred by 
denying in part his request for funds to retain independent experts.
          Counsel appointed to represent an indigent defendant in a criminal proceeding
shall, with prior court approval, be reimbursed for reasonable expenses incurred for
purposes of investigation and expert testimony. See Tex. Code Crim. Proc. Ann.
art. 26.05(d) (Vernon Supp. 2003); see also Rey v. State, 897 S.W.2d 333, 345 n.13
(Tex. Crim. App. 1995) (“We have recognized the relationship between the
fundamental right to effective assistance of counsel and the indigent’s right to the
appointment of an expert”). The appointment of an expert witness under article 26.05
rests within the sound discretion of the trial court. Stroker v. State, 788 S.W.2d 1, 16
(Tex. Crim. App. 1989). 
          Appellant retained his own counsel to represent him at trial and on appeal. On
April 9, two weeks before trial, appellant filed a motion for funds to retain an
independent investigator to assist him in preparation of a defense, claiming that he
was indigent. In this motion, appellant claimed that he filed an affidavit of indigence,
but this affidavit is not included in the record. 
          At a hearing on this motion, appellant argued that he could not afford to hire
an investigator because most of his funds were tied up in bond orders. Specifically,
appellant asked for an initial budget of $600 to retain a ballistics expert, but told the
trial court that, after consulting with this expert, he might need additional funds
should the expert need to testify. Appellant also requested funds for a forensic
document expert, a medical expert, and a fingerprint expert. After expressing
misgivings about allocating funds to appellant when he could afford to retain his own
counsel, the trial court ultimately decided to grant appellant $500 to be taken out of
his bond money to spend on any expert of his choice. Appellant did not file another
motion for additional funds.


 
          Because appellant retained his own counsel and because his purported affidavit
of indigence is not included in the record, he has failed to provide us with a sufficient
record to determine whether the trial court abused its discretion by denying him
additional funds. See Stroker v. State, 788 S.W.2d at 16. Further, even assuming
appellant was indigent, the trial court granted his request in part by allocating to him
$500 to spend on an expert. Under this order, appellant could have chosen any expert
to testify on his behalf. Appellant indicated that, upon expending these funds, he
might require additional funds. However, prior to trial, appellant did not request
additional funds. Therefore, appellant has waived any error. See Tex. R. App. P.
33.1. 
           We overrule appellant’s sixth point of error.
Denial of Cross-Examination
          In his seventh point of error, appellant contends that he was denied the right
to cross-examine the State’s witnesses.
          Appellant has the constitutional right to confront the witnesses against him. 
Delaware v. Van Arsdale, 475 U.S. 673, 678, 106 S. Ct. 1431, 1435 (1986); Shelby
v. State, 819 S.W.2d 544, 546 (Tex. Crim. App. 1991). A trial court may violate the
constitutional right of confrontation by improperly limiting cross-examination. Van
Arsdale, 475 U.S. at 679, 106 S. Ct. at 1435; Hurd v. State, 725 S.W.2d 249, 252
(Tex. Crim. App. 1987). When the right is violated, the State must show that the
error is harmless beyond a reasonable doubt. Shelby, 819 S.W.2d at 547. 
          Appellant complains of four incidents. First, appellant claims that the State
withheld Lino Garza’s statement in violation of the Gaskin rule, which has been
codified and expanded in Rule 615 of the Texas Rules of Evidence. See Gaskin v.
State, 353 S.W.2d 467, 469 (Tex. Crim. App. 1962); Tex. R. Evid. 615. Texas
Evidence Rule 615 requires that, when a State’s witness has given a statement prior
to testifying, the defendant, after a timely request, is entitled to inspect and use that
witness’s prior statement for cross-examination and impeachment purposes, even
though the witness may not have used the instrument to refresh his memory. Tex. R.
Evid. 615; Whalon v. State, 725 S.W.2d 181, 191 (Tex. Crim. App. 1986). 
          Although appellant requested Garza’s statement at a pre-trial hearing, he did
not argue that he was entitled to the statement under Gaskin.


 Further, the record
does not show whether, at this time, the State intended to call Garza to testify. 
Because Garza testified at trial, appellant was entitled to Garza’s statement at trial. 
However, the record does not show that he requested a copy of the statement at trial. 
Finally, appellant failed to preserve error because the record does not reflect any
effort by appellant to incorporate Garza’s statement into the appellate record or any
ruling by the trial court refusing to allow the making of such a record. See Newsome
v. State, 829 S.W.2d 260, 264 (Tex. App.—Dallas 1992, no pet.) (holding, under
Gaskin rule, that to preserve error, defendant must make effort to incorporate notes
into appellate record).  
 
          Second, appellant claims that he was denied the right of confrontation because
the trial court would not allow him to cross-examine Ray Pederson with his prior
statement. We have already determined in point of error three that the trial court
properly sustained the State’s objection to Pederson’s reading of his statement
because it was hearsay and because appellant had not properly impeached Pederson. 
Therefore, the trial court did not improperly limit appellant’s cross-examination of
Pederson. See Hurd, 725 S.W.2d at 252.
          Third, appellant complains that he was not allowed to discuss the symptoms of
a panic attack with Dr. Karlan Downing, the doctor who had treated him after he went
to the hospital complaining of chest pain the morning of the bond hearing. The State
called Dr. Downing as a witness. Dr. Downing briefly testified on direct examination
that she had diagnosed appellant with GERD, or indigestion. When appellant cross-examined Dr. Downing, he attempted to elicit testimony from her that appellant could
have experienced a panic attack. Dr. Downing testified that he had some, but not all,
of the symptoms of a panic attack. Appellant then attempted to question Dr. Downing
about DSM-IV.


 When the State objected that such testimony would be cumulative,
the trial court sustained this objection, noting that appellant had cross-examined Dr.
Downing for 40 minutes, that appellant had already elicited from Dr. Downing
testimony that appellant had the symptoms of a panic attack, and that questioning Dr.
Downing about DSM-IV would be cumulative. The record shows that appellant
extensively cross-examined Dr. Downing and successfully extracted testimony from
her that appellant had experienced symptoms of both a heart attack and a panic attack. 
Therefore, the record supports the trial court’s justification for sustaining the State’s
objection. We hold that the trial court did not abuse its discretion by improperly
limiting appellant’s cross-examination of Dr. Downing. See id. 
          Fourth, appellant claims that he was not allowed to impeach the testifying
officers with prior statements made by witnesses whom they had interviewed. A
witness may be impeached only by his own prior inconsistent statement. See Tex. R.
Evid. 613. Because the trial court properly refused to allow impeachment through
the statements of others, it did not improperly limit appellant’s cross-examination of
the testifying officers. See Hurd, 725 S.W.2d at 252. 
          We overrule appellant’s seventh point of error.
Denial of Right to Bring Witnesses 
          In his eighth point of error, appellant contends that he was denied the right to
bring witnesses and evidence on his own behalf. 
 
          First, appellant argues that he was not allowed to present the testimony of
Judge Beck about whether any bond hearing was held on August 10, 2000. 
Defendant subpoenaed Judge Beck to testify about his personal knowledge of the
events of August 10, 2000, the day that appellant’s bond hearing was scheduled and
the day on which Judge Beck issued a capias, but this subpoena was quashed. 
Appellant argues that, because no bond hearing was allegedly held, Judge Beck must
have been relying on his own personal knowledge to issue the capias, thereby placing
himself in the position of a witness with personal knowledge, subject to compulsory
testimony. For these reasons, appellant filed a motion to recuse Judge Beck, which
motion Judge Beck denied.
          Appellant does not complain that the trial court improperly quashed his
subpoena or that his motion to recuse was improperly denied. If we construe
appellant’s argument to mean that the trial court improperly quashed his subpoena,
appellant would be required to show that Judge Beck’s testimony would have been
both material and favorable to the defense. See Coleman v. State, 966 S.W.2d 525,
527-28 (Tex. Crim. App. 1998). Here, appellant did not demonstrate that Judge
Beck’s testimony would have been material or favorable to the defense because
appellant did not make an offer of proof or file a bill of exception with regard to
Judge Beck and his proposed testimony. Therefore, appellant failed to preserve any
error. See Tex. R. Evid. 103(a)(2) (requiring defendant to make substance of
excluded evidence known to court by offer of proof); Tex. R. App. P. 33.2 (stating
that party may file formal bill of exception to complain on appeal about matter not
appearing in record). 
          Appellant also argues that he was not allowed to present the testimony of
Willie Parham about whether appellant was improperly denied a bond hearing. Willie
Parham represented appellant on August 10, 2000, at the time of appellant’s first
scheduled bond hearing, but later withdrew as appellant’s counsel. On the day that
appellant’s bond hearing was scheduled, appellant claims that the trial court failed to
conduct a bond hearing and that appellant, complaining of chest pain, was taken by
ambulance to a nearby hospital. After having been treated at the hospital, appellant
fled to Arizona. 
          Appellant argues that Parham should have been allowed to testify as an expert
about the legal procedures for a bond hearing and that Parham’s testimony was
necessary to assist the trial court in determining whether appellant fled to Arizona
because he was denied his right to a bond hearing or because he was “running from
murder.” The trial court would not allow Parham to testify as an expert after the State
objected that (1) Parham would be giving a legal opinion and (2) his testimony was
irrelevant and would go to the “weight of the evidence.” The expert testimony
appellant that attempted to elicit from Parham concerned legal questions, which are
not a matter for the fact-finder to decide. See Rachal v. State, 917 S.W.2d 799, 817
(Tex. Crim. App. 1996). Because testimony about legal questions is inappropriate for
the fact-finder, the trial court properly excluded Parham’s expert testimony. See id. 
          Appellant also complains that Parham was not allowed to present lay testimony
that no hearing had occurred on August 10, 2000. Although the trial court prevented
Parham from testifying about legal questions, it ruled that it would allow him to
testify about the facts of August 10, 2000. Testimony was elicited from Parham that
appellant had been taken away by ambulance on August 10, 2000, before any hearing
was held. When appellant asked Parham other questions relating to whether the bond
hearing had indeed been held that day,


 the trial court sustained the State’s relevancy
objections. Appellant stated that he was offering Parham’s testimony to show that
appellant fled to Arizona because he was not afforded a bond hearing. However,
Parham’s testimony was not admissible to prove or to speculate about appellant’s
state of mind on August 10, 2000. See Arnold v. State, 853 S.W.2d 543, 547 (Tex.
Crim. App. 1993) (holding that witness cannot testify as to another person’s state of
mind). We hold that the trial court properly excluded this testimony. 
           Appellant cites numerous other instances in which the trial court did not allow
his witnesses to testify about certain matters in support of his complaint that he was
denied the right to bring witnesses and evidence on his own behalf. However, we
have reviewed each of the instances of which appellant complains and have found
that the trial court acted properly by disallowing the testimony. In some of these
instances, appellant did not even attempt to present or to ask questions about the
testimony that he claims on appeal that he was prevented from presenting at trial. 
With respect to the remainder of the complained-of instances of excluded testimony,
the trial court properly disallowed the testimony in response to the State’s hearsay or
relevancy objection. Again, we note that defense counsel did not attempt at trial to
overcome the State’s objection. Although appellant complains that his constitutional
right to due process was denied by the trial court’s rulings, his right to bring
witnesses and evidence on his own behalf is limited by the trial court’s duty to apply
the rules of procedure and evidence properly. 
          We overrule appellant’s eighth point of error.
Denial of Fair and Impartial Trial
          In his ninth point of error, appellant contends that he was denied a fair and
impartial trial because the trial judges demonstrated bias against him.  
 
          To warrant reversal, appellant must show that the trial court made a “willful
and calculated effort” to deprive him of a fair trial. Wesbrook v. State, 29 S.W.3d
103, 115 (Tex. Crim. App. 2000). Bias may arise from an extrajudicial source that
results in an opinion on the merits of the case other than what the judge learned from
participating in the case. Quinn v. State, 958 S.W.2d 395, 402-03 (Tex. Crim. App.
1997); Rosas v. State, 76 S.W.3d 771, 774 (Tex. App.—Houston [1st Dist.] 2002, no
pet.). A favorable or unfavorable predisposition may also be characterized as bias
because it is “so extreme as to display clear inability to render fair judgment.” Liteky
v. U.S., 510 U.S. 540, 551, 114 S. Ct. 1147, 1155 (1994). However, judicial remarks,
made during the course of trial, that are critical or disapproving of, or even hostile to,
counsel, the parties, or their cases do not ordinarily support bias. See id., 510 U.S.
at 555, 114 S. Ct. at 1157. Further, expressions of impatience, dissatisfaction,
annoyance, and even anger that are within the bounds of what imperfect men and
women, even after having been confirmed as judges, may display, will not establish
bias. See id., 510 U.S. at 555-56, 114 S. Ct. at 1157. However, if judicial remarks
or actions reveal a high degree of favoritism or antagonism such as to make fair
judgment impossible, bias may exist. See id., 510 U.S. at 555, 114 S. Ct. at 1157. 
          Appellant cites numerous instances of alleged bias. Appellant’s strongest
argument for bias with regard to Judge Beck, who presided prior to trial, is evidenced
by an exchange between Judge Beck and appellant’s counsel during the recusal
hearing on February 28, 2001: 
Court:In regards to the Motion to Recuse, that
motion is denied, and I am going to probably
send this case to the Impact Court.
 
Appellant’s Counsel:With all deference to the Court, my
understanding, Judge, is should you deny the
Motion to Recuse, the procedure at that point,
and you can certainly check with Judge
Underwood, is to send it to hearing to
determine whether or not you should be
recused.
 
Court:Mrs. Parham, why do you want to make life
so difficult always? Just constantly. I know
you represent your client. Don’t make life
miserable on everybody else while you do so. 
That is just not a good way to do business.
 
Appellant’s Counsel:Judge, I am asking this Court to follow
procedure. That is all I am asking.
 
Court:Mrs. Parham, when has this Court not
followed procedure?
 
Appellant’s Counsel:If procedure—
 
Court:Don’t suggest that we don’t follow procedure. 
The next procedure I may follow is to
institute a Motion for Contempt against you. 
And if I properly followed procedure, that is
probably what I would have done a long time
ago.
 
Appellant’s Counsel:This procedure—
 
Court:I have had enough, Mrs. Parham. This
hearing is concluded. Okay. This hearing is
concluded. Off the record.

          Although the judge expressed some annoyance with the manner in which
appellant’s counsel was proceeding, the judge’s remarks above do not appear to
reveal a high degree of favoritism towards the State or antagonism against appellant
so as to render fair judgment impossible. See id., 510 U.S. at 555, 114 S. Ct. at 1157. 
Further, Judge Beck did not make these comments in front of the jury and did not
participate in the voir dire or trial of appellant’s case, which had been transferred, as
Judge Beck had predicted, to the impact court to be tried by another judge. We do not
find that the above comment demonstrates that the trial court made a “willful and
calculated effort” to deprive appellant of a fair trial. See Wesbrook, 29 S.W.3d at
115. 
           Appellant also claims that Judge Densen, who presided at trial, demonstrated
bias against him. After reviewing every single complained-of allegation of bias, we
conclude that the record does not support appellant’s contentions that Judge Densen
showed bias or prejudice. Instead, these examples reflect merely innocuous judicial
rulings, routine trial-administration efforts, or ordinary admonishments. We hold that
none of the allegations in the record to which appellant points supports appellant’s
claim that he was deprived a fair and impartial trial because of alleged bias on the part
of the trial court judges.
          We overrule appellant’s ninth point of error.
Conclusion
          We affirm the trial court’s judgment. 



     Tim Taft
     Justice

Panel consists of Justices Taft, Keyes, and Higley.

Do not publish. Tex. R. App. P. 47.2(b).