TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-00-00211-CV






In the Matter of M. P. A.









FROM THE COUNTY COURT AT LAW NO. 1 OF BELL COUNTY


NO. 176,452-C, HONORABLE EDWARD S. JOHNSON, JUDGE PRESIDING







 M.P.A., a juvenile, was adjudicated delinquent on two counts of aggravated sexual
assault on a child, given a determinate sentence of twenty years, and remanded to the custody of
the Texas Youth Commission.(1) On appeal, appellant contends that the trial court committed
reversible error in (i) excluding evidence relating to the bias and motive of the complainant and
(ii) allowing a medical witness to testify to hearsay statements. We affirm the trial court's
judgment.


FACTS AND PROCEDURAL BACKGROUND


 The State alleged in two counts that on or about May 1, 1997, appellant committed
aggravated sexual assault on S.A. Because appellant does not challenge the sufficiency of the
evidence, only a brief recitation of the facts is necessary. S.A. and her brother, A.A., were seven
and five years old, respectively, at the time of the offense. Appellant, their cousin, lived nearby
with his parents. S.A. testified at trial that appellant made her put her mouth on his "private parts"
and also caused his "private parts" to touch her "private parts." He told her not to tell anyone. 
At trial, S.A. testified that she was uncertain whether the events took place at her house, her
grandmother's house, or the appellant's house, all of which were within walking distance of each
other.

 S.A. apparently made an "outcry" about the assaults sometime later. She testified
at trial that she had moved from Texas to Florida and then to Iowa. She further testified that at
the time of trial she was living with her mother in Iowa and her brother, A.A., was living with
their father in Harker Heights, Texas. A.A. testified that he had moved to Iowa to live with his
mother until he moved back to Harker Heights. He testified to events similar to those experienced
by S.A., but was uncertain whether the assailant was appellant or appellant's brother.(2)

 The State also called as witnesses Alice Lindner, a sexual assault nurse at Scott &
White Hospital in Temple, and Dr. Pamela Green, a physician and the medical director of the
sexual assault team at the hospital. Ms. Lindner testified that in June 1999 she conducted a sexual
assault examination of the two children. She took a history from both children and examined their
genital areas for trauma and other evidence. In the course of the examination, S.A. told Ms.
Lindner that appellant and his brother "put their privates in my butt."(3) During the course of his
examination, A.A. made a similar statement.

 Appellant testified that he had never been alone with his cousins and that he did not
commit the offenses alleged. The jury found that appellant had committed aggravated sexual
assault as alleged in the State's petition and affixed punishment at twenty years.


DISCUSSION


Standard of Review

 A trial court is given wide discretion in determining the admissibility of evidence. 
Johnson v. State, 698 S.W.2d 154, 160 (Tex. Crim. App. 1985). We review a trial court's ruling
to admit or exclude evidence under an abuse of discretion standard. Green v. State, 934 S.W.2d
92, 101-02 (Tex. Crim. App. 1996). We will not reverse a ruling so long as it falls "within the
'zone of reasonable disagreement.'" Id. at 102 (quoting Montgomery v. State, 810 S.W.2d 372,
391 (Tex. Crim. App. 1990)). Exclusion of evidence does not result in reversible error unless the
exclusion affects a substantial right of the accused. Tex. R. Evid. 103(a); Tex. R. App. P.
44.2(b); Green, 934 S.W.2d at 102.


Limitation of Cross-Examination

 Appellant complains that he was not allowed to question S.A. and her brother 
"concerning their living conditions and other factors affecting their motivation to testify." 
Recognizing that a trial judge may place reasonable limits on cross-examination, appellant
nevertheless argues that the trial court precluded him from asking questions that would establish
the witnesses' bias and motive to testify against him. See Hurd v. State, 725 S.W.2d 249, 252
(Tex. Crim. App. 1987). Appellant further contends that the court's limitation on questioning
violated his Sixth Amendment right to confront the witnesses against him. See U.S. Const.
amend. VI.

 Specifically, appellant contends that he was prejudiced by the trial court's refusal
to allow questions concerning the children's living conditions at the time of the offenses, their
parents' divorce, and their moves to residences in other states. He suggests that the children may
have been manipulated by the parents to gain an advantage in the divorce proceeding or for some
other unspecified reason.

 Appellant's mother first testified that S.A. and A.A. moved from their nearby
residence in Harker Heights to Florida. "It was basically after [their mother] got her income tax,
she moved out on [her husband] and took the children with her." She further testified that A.A.
returned to live in Harker Heights when his father obtained custody of him. The children's
grandmother testified that S.A. moved with her mother to Iowa. S.A. then testified that she had
lived in Florida, Iowa, and in California for a month. On cross-examination, S.A. testified that
at the time of trial she lived with her mother in Iowa and that her brother lived with their father
in Harker Heights. Her half-sister had also lived with the family in Harker Heights for several
months. At the close of S.A.'s testimony, defense counsel asked to approach the bench to discuss
a motion-in-limine question with the trial judge. A discussion was held off the record and defense
counsel then passed the witness.

 At the close of the State's case, defense counsel advised the court that, if he had
been allowed to ask additional questions of S.A., he would have asked S.A. questions concerning
(i) her move as a result of her parents' divorce, (ii) whether she had made statements about a
custody "battle" to anyone, and (iii) whether she had wanted to live with her mother rather than
her father. The court observed that the only question counsel had asked the court to allow was
whether S.A. had made a statement that "my life has been nothing but custody battles." We will
assume for purposes of this discussion that this issue was properly preserved.

 Relying on Delaware v. Van Arsdall, the Texas Court of Criminal Appeals has held
that "[t]he practice of exposing a witness' motivation to testify against a defendant is a 'proper and
important function of the constitutionally protected right of cross-examination.'" Hurd, 725
S.W.2d at 252 (quoting Delaware v. Van Arsdall, 475 U.S. 673, 679 (1986)). In Hurd v. State,
the court recognized that "a defendant is allowed great latitude to show any fact which would tend
to establish ill feeling, bias, motive and animus on the part of the witness testifying against him." 
Id.

 Here, the trial court conducted a hearing outside the presence of the jury to allow
defense counsel an opportunity to establish bias or motive. In response to appellant's questioning,
S.A. denied any knowledge that the move to Iowa was related to her parents' divorce or that
anyone told her what to say. She acknowledged that she wanted to live with her mother rather
than with her father. She further denied making a statement to anyone that her life had been "one
big custody battle." Appellant did not call any other witnesses to establish the existence of a
custody dispute or its relevance to this cause. Nor did defense counsel explain to the court any
bias or motivation that S.A. might have as a result of the divorce and custody dispute. Following
the hearing, the trial court sustained the State's objection to the proffered questions.

 We find no error by the trial court in refusing to allow appellant to ask S.A. 
additional questions about the divorce and custody battle. On cross-examination of S.A. and other
witnesses, the trial court permitted appellant to establish the relevant family dynamics in front of
the jury. Moreover, given S.A.'s answers to these questions during the hearing out of the
presence of the jury, appellant failed to establish a basis for any possible bias or motive as a result
of the divorce. Appellant's proposed line of questioning did not explain or establish any bias or
motive. While appellant claims the answers to his questions establish a rationale for S.A. to
fabricate testimony, we agree with the trial court that they had no demonstrated relevance to the
issues of the case, and that appellant did not meet his burden of showing the questions were
material and relevant. No error has been shown and appellant's first issue is overruled.


Admission of Hearsay

 Appellant next argues that the trial court erred in admitting the testimony of a
sexual assault nurse regarding S.A.'s description of her history of sexual abuse. Specifically,
appellant contends that statements made to the nurse by S.A. and her brother were inadmissible
because they did not constitute "outcry" statements and were not made for the purposes of
diagnosis or treatment. Rather, appellant urges that, because the examination of the children was
requested by the Bell County Attorney's Office, the statements were made not for the purpose of
treatment but for trial preparation. The State argues that the statements made by the children to
the nurse were admissible under rule 803(4) of the Texas Rules of Evidence. See Tex. R. Evid.
803(4).

 Alice Lindner, the registered nurse, testified that she obtained a history from, and
conducted a detailed physical examination of, S.A. and A.A. for the purpose of diagnosis and
treatment, as well as to gather evidence. During the course of the examination, S.A. described
the specific acts of sexual assault committed upon her and the identity of her assailant. At trial,
Ms. Lindner testified that S.A. told her that appellant and his brother "put their privates in my
butt." As a result of the physical examination, Ms. Lindner discovered a medical condition--an
altered hymen--that was related to the allegations of sexual assault. Over appellant's hearsay
objection, the State offered Ms. Lindner's testimony concerning the statements made by S.A. and
a similar statement made by A.A. The court overruled the objections and admitted the
statements.(4) Dr. Green testified that the hymenal alteration was consistent with the history
reported by S.A.

 Rule 803(4) creates an exception to the hearsay rule for "[s]tatements made for
purposes of medical diagnosis or treatment and describing medical history, or past or present
symptoms, pain, or sensations, or the inception or general character of the cause or external
source thereof insofar as reasonably pertinent to diagnosis or treatment." Tex. R. Evid. 803(4). 
The medical treatment exception to the hearsay rule is based on the assumption that the patient
appreciates that the effectiveness of the treatment may depend on the accuracy of the information
provided to the physician. McCormick on Evidence § 277, at 233 (5th ed. 1999). Whether the
information is equally reliable when provided by very young children is less clear. See Fleming
v. State, 819 S.W.2d 237, 247 (Tex. App.--Austin 1991, pet. ref'd).

 Contending that the statements were inadmissible because the sole function of the
examination was to gather evidence to be used in prosecuting the case, appellant argues that the
statements do not fall within the exception to the hearsay rule provided by rule 803(4). As Ms.
Lindner testified, however, she obtained medical history from and conducted a complete physical
examination of S.A. for diagnosis as well as treatment. She also conducted a detailed genital
examination of S.A. looking for evidence of trauma or injury. She found no evidence of recent
trauma but discovered the hymenal alteration. Statements made by an abused child to a medical
professional, including identification of the abuser, are admissible under rule 803(4) where such
statements were reasonably pertinent to the diagnosis and treatment of the child's injuries. Beheler
v. State, 3 S.W.3d 182, 189 (Tex. App.--Fort Worth 1999, pet. ref'd); Fleming, 819 S.W.2d at
247; Torres v. State, 807 S.W.2d 884, 886-87 (Tex. App.--Corpus Christi 1991, pet. ref'd). 
Although the record is somewhat spare, Ms. Lindner explained that the statements were pertinent
to diagnosis and treatment.

 Moreover, appellant has not shown that Ms. Lindner's interview of S.A. was
untrustworthy. Appellant has not presented any evidence indicating that Ms. Lindner conducted
the interview in a suggestive or otherwise improper manner. At the beginning of both children's
testimony, the court asked questions to determine whether the child appreciated the need to be
truthful. Although the court did not make a specific inquiry concerning their truthfulness to the
nurse, the court asked general questions and concluded that they understood the difference between
the truth and a lie and the need to be truthful in their statements. Lindner testified that she allowed
S.A. to respond to her questions from behind a privacy screen and that she asked standard
questions for the purpose of diagnosis and treatment. Although part of Lindner's sexual assault
examination protocol was the collection of physical evidence, she nevertheless performed sufficient
functions to bring her within the scope of rule 803(4).

 We conclude that statements made by S.A. and A.A. to the nurse describing the acts
and identifying the assailant were reasonably pertinent to medical diagnosis and treatment, and
were properly admitted pursuant to rule 803(4).


CONCLUSION


 The court did not abuse its discretion by limiting the cross-examination of S.A. and
by admitting the nurse's testimony as to statements made by the complainants. The issues are
overruled and the judgment of conviction is affirmed.



 

 Jan P. Patterson, Justice

Before Justices Jones, B. A. Smith and Patterson

Affirmed

Filed: November 30, 2000

Do Not Publish

1. See Tex. Penal Code Ann. § 22.021(a)(1)(B)(i) (West 1994 & Supp. 2000).
2. In a third count, the State alleged that appellant committed aggravated sexual assault on
A.A. The trial court granted a directed verdict of "not true" to the third count.
3. The record reflects that appellant's brother pleaded guilty to similar allegations involving
the same victims, and was not a part of appellant's trial.
4. Appellant also objects to the State's failure to provide notice of its intention to offer the
statements. To preserve a complaint for appellate review, a party must have presented to the trial
court a timely request, objection, or motion that states the specific grounds for the desired ruling
if they are not apparent from the context. Tex. R. App. P. 33.1(a)(1). Because appellant failed
to object on this ground, error is not preserved and the complaint is waived. See Taylor v. State,
939 S.W.2d 148, 155 (Tex. Crim. App. 1996).


purposes of medical diagnosis or treatment and describing medical history, or past or present
symptoms, pain, or sensations, or the inception or general character of the cause or external
source thereof insofar as reasonably pertinent to diagnosis or treatment." Tex. R. Evid. 803(4). 
The medical treatment exception to the hearsay rule is based on the assumption that the patient
appreciates that the effectiveness of the treatment may depend on the accuracy of the information
provided to the physician. McCormick on Evidence § 277, at 233 (5th ed. 1999). Whether the
information is equally reliable when provided by very young children is less clear. See Fleming
v. State, 819 S.W.2d 237, 247 (Tex. App.--Austin 1991, pet. ref'd).

 Contending that the statements were inadmissible because the sole function of the
examination was to gather evidence to be used in prosecuting the case, appellant argues that the
statements do not fall within the exception to the hearsay rule provided by rule 803(4). As Ms.
Lindner testified, however, she obtained medical history from and conducted a complete physical
examination of S.A. for diagnosis as well as treatment. She also conducted a detailed genital
examination of S.A. looking for evidence of trauma or injury. She found no evidence of recent
trauma but discovered the hymenal alteration. Statements made by an abused child to a medical
professional, including identification of the abuser, are admissible under rule 803(4) where such
statements were reasonably pertinent to the diagnosis and treatment of the child's injuries. Beheler
v. State, 3 S.W.3d 182, 189 (Tex. App.--Fort Worth 1999, pet. ref'd); Fleming, 819 S.W.2d at
247; Torres v. State, 807 S.W.2d 884, 886-87 (Tex. App.--Corpus Christi 1991, pet. ref'd). 
Although the record is somewhat spare, Ms. Lindner explained that the statements were pertinent
to diagnosis and treatment.

 Moreover, appellant has not shown that Ms. Lindner's interview of S.A. was
untrustworthy. Appellant has not presented any evidence indicating that Ms. Lindner conducted
the interview in a suggestive or otherwise improper manner. At the beginning of both children's
testimony, the court asked questions to determine whether the child appreciated the need to be
truthful. Although the court did not make a specific inquiry concerning their truthfulness to the
nurse, the court asked general questions and concluded that they understood the difference between
the truth and a lie and the need to be truthful in their statements. Lindner testified that she allowed
S.A. to respond to her questions from behind a privacy screen and that she asked standard
questions for the purpose of diagnosis and treatment. Although part of Lindner's sexual assault
examination protocol was the collection of physical evidence, she nevertheless perfor