**Lonnie HURD, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 264–86.**

Court of Criminal Appeals of Texas, En Banc.

Feb. 25, 1987.

J. Ronald Vercher (court appointed on appeal only), (David B. Ziegler, of counsel), Larry D. Dowell, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty. and Dinah Bailey, Don Clemmer & David Knight, Asst. Dist. Attys., Houston, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

WHITE, Judge.

Appellant was convicted of aggravated robbery by a jury. The trial court assessed his punishment at confinement for fifteen years and one day in the Texas Department of Corrections. In his appeal, the appellant raised a point of error contending that the trial court improperly denied him his right to effective cross-examination by not allowing his counsel to cross-examine the complaining witness about his racial prejudice. The Court of Appeals overruled this point of error, and five others, in affirming the judgment of the trial court. *Hurd v. State*, 704 S.W.2d 539 (Tex.App. 14th Dist., 1986).

The Court of Appeals decided that trial courts have wide discretion in deciding how bias can be proven and the extent cross-examination should take for the purpose of showing bias. The Court of Appeals concluded the trial court acted within its discretion when it barred the appellant from cross-examining the complaining witness about his specific acts of racial bigotry, and when it decided that the appellant would only be allowed to prove racial prejudice through the testimony of other witnesses. *Hurd*, supra, at 541.

By petition for discretionary review to this Court, the appellant raised one ground for review. The appellant presented a sufficient reason for review when he argued that the decision of the Court of Appeals is in conflict with prior decisions of this Court. Tex.App.R. 200(c)(3).

In his ground for review, appellant stated that the trial court limited his cross-examination of the complaining witness, thereby violating his right to cross-examine and confront the witness against him. U.S. Const. Amend. VI and XIV and Tex. Const. art. I, sec. 10. He argues it was error for the trial court to require him to affirmatively show the prejudice of the complaining witness through the testimony of other

witnesses, and not through the cross-examination of the complaining witness.

In its response to the appellant's petition and brief, the State urges us to accept the decision of the Court of Appeals and approve its reasoning that this was a legitimate exercise of the trial court's discretion. The State also argued that the appellant failed to preserve error by not filing an adequate bill of exception.

This Court granted the appellant's petition for discretionary review. We reverse the decision of the Court of Appeals.

A review of the facts is necessary. The complaining witness, Clail MacSorley, testified that he worked as a manager of a Radio Shack in Houston on the day the instant offense was committed. MacSorley, who is white, testified that the appellant, who is black, used a gun to place MacSorley in fear for his life, and then robbed MacSorley. Before the appellant could take control of MacSorley's money, an employee of Radio Shack, Jody Coles, entered the store. According to MacSorley, appellant then left the store without completing the appropriation of MacSorley's property. MacSorley also testified that appellant wore a shirt which had both his first name and place of employment written on it, parked his own car in front of the store, and, initially, left his car keys on the counter during the robbery. Coles testified that he only saw a gun in the waistband of the appellant's pants as the appellant left. The appellant testified that he did not attempt to rob the store, that he did not pull his gun on MacSorley, and that he and MacSorley merely argued.

MacSorley's testimony was vitally important to the prosecution's case against the appellant because there were no other witnesses to the facts which constituted the elements of aggravated robbery. Coles' testimony, that appellant had a gun tucked in the waistband of his pants as he left the store, provided no more corroboration for MacSorley's testimony than it provided for the appellant's testimony. Without MacSorley's testimony, there could have been no conviction of the appellant.

Counsel for appellant sought to impeach the reliability of MacSorley's testimony by showing, on cross-examination, that MacSorley was prejudiced against black people and that his prejudice improperly motivated him to testify as he did. The only questions which appellant was allowed to ask MacSorley, in the presence of the jury, were "do you have anything against black people?", "have you ever stated, or had feelings or oppositions to people of black race?", and "there is nothing then in your past ... that would reflect that you would do anything adverse toward a person solely for the reason they were black?" MacSorley responded in the negative to all three inquiries.

Then counsel for appellant attempted to ask MacSorley about problems that he had when he worked as a police officer in Florida, about whether MacSorley knew a man named Bert Straley, and whether there was anything in MacSorley's past about blacks. Each time, the State objected before MacSorley could answer the questions, and the trial court sustained the objections.

Outside the presence of the jury, the appellant's counsel explained to the trial court what he wanted to show the jury through his cross-examination of MacSorley. Appellant's counsel stated that he wanted to ask MacSorley whether he had an "established propensity for hating people of black race", if MacSorley had been "terminated from his employment on several occasions for violence against blacks" whether MacSorley had actually "fired every black employee he ever had", and if MacSorley was terminated from his employment as manager of a liquor store in Florida because he had problems with black customers.

Counsei for appellant set out, for the trial court, his reasons for cross-examining MacSorley about these subjects. Counsel stated:

"I have a duty to do in defending Mr. Hurd. This jury needs to know that this man hates black people ...

"It's proper to show a motive for an individual to testify in the fashion in which he is testifying. ...

"I could show this Court he has a motive for testifying like this and it's in his character."

However, the trial court sustained the State's objection, and denied the appellant an opportunity to cross-examine MacSorley as to the reasons for the terminations of his past jobs, including those as a police officer and a liquor store manager. Appellant was also prevented from asking MacSorley about other alleged acts of bigotry.

The trial court informed counsel for appellant that if "you have any witnesses that could impeach him (MacSorley) on these things, I will let you put these things on." In effect, the trial court permitted the counsel for appellant to present evidence of MacSorley's prejudice *only* through direct examination of other witnesses.

During final arguments, counsel for appellant stated:

"There are a lot of things I can't get into as far as impeachment is concerned. ... I can't ask him, 'Have you ever been fired from a job because of harassment of blacks.'"

The State's counsel objected to this argument, and the trial court sustained that objection.

During his closing argument to the jury, the counsel for the State responded:

"I will tell you how he did it, and that is by creating, through accusations and innuendoes and supposition, the illusion that Mr. MacSorley is up here telling you a bunch of lies to get poor old Lonnie Hurd. Think about it. They didn't put on one shred of evidence; one witness to support any of the accusations that he made during cross-examination. During that cross-examination, he asked him all those questions about Florida and he—"

This argument by counsel for the State surely must have drawn the jury's attention to both the fact that appellant called no witnesses to prove that MacSorley was a bigot, but also to the fact that appellant asked no questions of MacSorley about specific acts of bigotry committed in the course of prior employments.

Appellant argues that the trial court's decision to limit his questioning of MacSorley violated his right to confront, and cross-examine, the witnesses against him. We agree.

The practice of exposing a witness' motivation to testify against a defendant is a "proper and important function of the constitutionally protected right of cross-examination." *Delaware v. Van Arsdale,* — U.S. —, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986). In exercising that right, a defendant is allowed great latitude to show any fact which would tend to establish ill feeling, bias, motive and animus on the part of the witness testifying against him. *Simmons v. State,* 548 S.W.2d 386 (Tex.Cr. App.1977); *Castro v. State,* 562 S.W.2d 252 (Tex.Cr.App.1978); and *Parker v. State,* 657 S.W.2d 137 (Tex.Cr.App.1983).

This right to confront witnesses does not prevent a trial court from imposing some limits on the cross-examination into the bias of a witness. Trial courts retain some discretion in deciding how and when bias may be proved, and what collateral evidence is material for that purpose. *Spriggs v. State,* 652 S.W.2d 405 (Tex.Cr. App.1983) and *Green v. State,* 676 S.W.2d 359 (Tex.Cr.App.1984). In exercising this discretion, the trial courts have the latitude to impose reasonable restrictions on such cross-examination. These restrictions may be based on concerns such as "harassment, prejudice, confusion of issues, the witness' safety, or interrogation that is repetitive or marginally relevant." *Delaware v. Van Arsdale,* supra, 106 S.Ct. at 1435.

The trial court's discretion in this area has limits. For example, a trial court may not restrict a defendant to any one method in showing any fact which would tend to establish bias. *Harris v. State,* 642 S.W.2d 471 (Tex.Cr.App.1982). Also, it is not within a trial court's discretion to prohibit a defendant from engaging in "otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness." *Delaware v. Van Arsdale,* supra, 106 S.Ct. at 1436.

In the instant case, the trial court acknowledged that the alleged bigotry of

MacSorley was relevant to issues on trial when he told counsel for appellant that he would permit him to introduce some evidence of that bigotry. However, it was error for the trial court to restrict the appellant to only one method of proof: the direct examination of other witnesses.

Appellant's counsel sought to prove, through appropriate cross-examination, that the witness MacSorley was racially prejudiced. Proving that MacSorley was racially prejudiced was an important element of the appellant's defense from the beginning of the trial. The record in the instant case makes this fact obvious.

The few general questions which the trial court permitted him to ask MacSorley did not constitute an "otherwise thorough and effective cross-examination." *Carmona v. State,* 698 S.W.2d 100 (Tex.Cr.App. 1985). Unlike the witness in *Carmona,* the bias and prejudice of MacSorley was not "patently obvious" from the few questions he was asked. *Carmona,* supra, at 104. Racial bigotry is a prototypical form of bias.[1] It was error for the trial court to limit the appellant's cross-examination of the witness MacSorley.

■ The State argues that appellant failed to preserve that error. We disagree, and hold that the appellant did preserve the record of the trial court's error. Counsel for appellant made an informal bill of exceptions which complied with Article 40.09, Sec. 6(d)(1), V.A.C.C.P. (repealed); Tex. App. Rule 52(b). *Koehler v. State,* 679 S.W.2d 6 (Tex.Cr.App.1984) (concurring opinion by Judge Clinton). His actions were sufficient to show what questions he would have asked the witness, and the answers which he might have received. *Koehler v. State,* supra, at 9. He informed the trial court that the testimony was sought to show bias as the witness' motive. *Adams v. State,* 577 S.W.2d 717 (Tex.Cr. App.1979). It was not necessary for counsel to show the trial court that his cross-ex-

amination of the witness would affirmatively establish the facts he sought to prove. *Spain v. State,* 585 S.W.2d 705 (Tex.Cr. App.1979) and *Koehler,* supra. Counsel for appellant preserved the error.

We reverse the decision of the Court of Appeals and the judgment of the trial court. This cause is remanded to the trial court.

ONION, Presiding Judge, dissenting.

I agree with the Court of Appeals. Today the majority limits the discretion of the trial judge and goes a long way in permitting the trial of a complaining witness rather than a defendant.

I dissent.

---

1. In *Delaware v. Van Arsdale,* the prototypical form of bias was the dismissal of a pending criminal charge against the testifying witness, which could have furnished the defendant with a motive for favoring the prosecution in his testimony. In the instant case, it is reasonable to assume that the alleged racial bias of the witness MacSorley could furnish him with a motive for favoring the State in his testimony.