Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★        ★ ★ ★

**MEMORANDUM OPINION**

No. 04-08-00728-CR

Jesse **MENDEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 144th Judicial District Court, Bexar County, Texas
Trial Court No. 2006-CR-3128B
Honorable Phil Chavarria, Judge Presiding[1]

Opinion by:    Marialyn Barnard, Justice

Sitting:        Catherine Stone, Chief Justice
               Karen Angelini, Justice
               Marialyn Barnard, Justice

Delivered and Filed: December 30, 2009

AFFIRMED

     A jury convicted Jesse Mendez of robbery. After he pled true to an enhancement allegation, the jury sentenced him to fifty-five years incarceration. In five issues, Mendez contends the trial court erred in admitting the testimony of his parole officer, Tambra Satterfield, who identified Mendez from photographs taken during the commission of the offense. We affirm.

---

[1] The Honorable Phil Chavarria was sitting by assignment.

BACKGROUND

In the early morning hours of October 31, 2005, cab driver Ezequiel Lomas was dispatched to pick up a fare at a San Antonio restaurant. When he arrived, he saw a man and a woman waiting. The couple entered the cab, the man sitting behind Lomas, and gave Lomas their destination. Lomas turned on the cab's meter, which activated a camera that takes photographs of everything inside the vehicle. As they were arriving at their destination, the man pulled a gun and put it against Lomas's right temple. The man told Lomas to give him his money. Lomas grabbed the gun barrel, and the men struggled. The woman began hitting Lomas, and Lomas eventually stopped struggling. The woman took money from Lomas's pockets. The man forced Lomas out of the cab and got into the driver's seat. The couple then took off in the cab. Because his cell phone was still in the cab, Lomas walked back to the restaurant and called police and his dispatcher from a pay phone.

When police officers arrived, Lomas told them the cab was equipped with a Global Positioning Satellite system, and his dispatcher had the location of the cab. The police drove Lomas to the cab, which was found abandoned a few blocks away from the restaurant. The cab was parked, the doors were open, the keys were still in the ignition, and the meter was running–meaning the camera was still active. Missing from the cab was Lomas's cell phone and brief case, which contained approximately $300.00. The police fingerprinted the cab, but only one fingerprint was matched, and it belonged to Lomas. When police finished processing the cab, they allowed Lomas to take the cab back to the cab company to print photographs from the camera. Lomas took the photographs to the police when he went to the station to give his statement.

The night of the robbery, no suspects were apprehended. The next day, a patrol officer came upon two women fighting in the street. One of the women gave the patrol officer a false name. The

name she provided was that of a person with an outstanding arrest warrant. When the officer advised the woman of this fact, she ran, but was quickly caught. The woman then advised the officer of her real name, Roxanne Herrera. While Herrera was sitting in the officer's patrol car, the lead detective in the Lomas robbery advised the patrol officer by radio that Herrera matched the description of the female suspect from the robbery. The officer questioned Herrera, who heard the radio transmission, and she admitted she had taken part in the robbery. Herrera provided a statement to the lead detective, but could only identify her male accomplice as "Weenie." Ultimately, investigators learned Weenie's real name was Jesse Mendez.

Investigators also showed photographs taken by the cab camera to Mendez's parole officer, Tambra Satterfield. Satterfield identified Mendez as the male robber in the cab photos.

Two months after the robbery, Lomas was unable to identify either Herrera or Mendez from a photo line-up. The best Lomas could do was to say Mendez looked more like the man who robbed him than any of the other men in the line-up.

Mendez was arrested and charged with robbery. At trial, Lomas described the robbery, but was unable to positively identify Mendez as the man who committed the robbery. Similar to his earlier identification at the photo line-up, Lomas stated he could say only that Mendez looked like the man who robbed him.

Herrera, in exchange for a reduced sentence, testified against Mendez. Herrera admitted robbing Lomas, and identified Mendez as "Weenie," her accomplice in the robbery. In her testimony, she described how Mendez suggested they should rob a cab driver to get money to buy drugs. She testified they called a cab, but when it arrived they decided not to go through with the plan. Later, however, they called another cab. When the second cab arrived, Mendez got in first and

she followed. Herrera stated Mendez put a gun to Lomas's head, but Lomas grabbed the gun. After a struggle, Lomas gave up, and Herrera searched his pockets, taking about $90.00. Herrera stated that after forcing Lomas from the cab, they drove away but soon abandoned the cab after taking a briefcase from under the front seat. They took the money out of the briefcase and left the briefcase in a field. During her testimony, the State presented the photographs from the cab camera, which it had introduced and were admitted into evidence for the jury to review, to Herrera and she recognized herself in the photos. She also testified she recognized Mendez from the photos.

The State also called Satterfield, Mendez's parole officer, to testify. At no point during its examination of Satterfield did the State elicit testimony from Satterfield regarding her relationship to Mendez as his parole officer or his prior convictions. Satterfield testified she knew Mendez and had seen him three or four times. The State showed her the photographs from the cab, and just as before, she identified Mendez as the male robber in Lomas's cab.

## DISCUSSION

Mendez challenges the trial court's decision to admit Satterfield's identification testimony. More specifically, he contends the trial court erred in admitting the testimony because: (1) it was irrelevant; (2) it was improper bolstering; (3) even if relevant, the testimony was more prejudicial than probative; (4) it violated Mendez's Sixth Amendment right of confrontation; and (5) it violated Mendez's Fifth Amendment right against self-incrimination.

### *Standard of Review*

In all five issues, Mendez claims the trial court erred in admitting Satterfield's identification testimony. A trial court's decision to admit evidence over objection is reviewed under an abuse of discretion standard and will not be reversed absent a clear abuse of that discretion. *McCarty v. State*,

257 S.W.3d 238, 239 (Tex. Crim. App. 2008). A trial court abuses its discretion when its decision "lies outside the zone of reasonable disagreement." *Id.*

Error in the admission of evidence is subject to a harm analysis under rule 44.2 of the Texas Rules of Appellate Procedure. *See* TEX. R. APP. P. 44.2. Whether error is considered constitutional or nonconstitutional determines what part of rule 44.2 we apply. With respect to the erroneous admission of evidence, constitutional error is an error that directly offends against the United States or Texas Constitutions without regard to any statute or rule that might also apply, and is presented only if the correct ruling was constitutionally required. *Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *King v. State*, 953. S.W.2d 266, 271 (Tex. Crim. App. 1997). If error is constitutional, we apply rule 44.2(a) and reverse unless we determine "beyond a reasonable doubt that the error did not contribute to the conviction or punishment." TEX. R. APP. P. 44.2(a).

In general, however, the mere misapplication of a rule of evidence that results in the erroneous admission of evidence is considered nonconstitutional error. *Id*. If error is nonconstitutional, we apply rule 44.2(b) and disregard the error unless it affects the defendant's substantial rights. TEX. R. APP. P. 44.2. A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *King*, 953 S.W.2d at 271.

### Texas Rule of Evidence 401

In his first issue, Mendez contends Satterfield's identification testimony was irrelevant because her identification of Mendez did not add anything to the State's factual evidence. Mendez contends that although Satterfied knew Mendez, Satterfield did not take or develop the photographs, nor did she have any personal knowledge as to the circumstances surrounding the photographs.

Texas Rule of Evidence 401 describes relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." TEX. R. EVID. 401; *see Montgomery v. State*, 810 S.W.2d 372, 386, (Tex. Crim. App. 1990) (opinion on reh'g). Under Texas Rule of Evidence 402, relevant evidence is admissible except as otherwise provided, and irrelevant evidence is inadmissible. TEX. R. EVID. 402.

In this case, the identity of Mendez as the male robber was heavily contested throughout the trial. The defense's theory was based upon Mendez's assertion that he did not commit the robbery, but someone by the name of Mike committed the robbery with Herrera. During its case-in-chief, the State offered Herrera's testimony, during which she identified Mendez as her accomplice in the robbery. The State also offered photographic evidence taken by the cab camera from which Herrera identified Mendez as the male robber depicted in the photographs. To corroborate Herrera's testimony, the State also offered the testimony of Lomas and Satterfield. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2006) (requiring accomplice testimony to be corroborated by other evidence tending to connect defendant with offense committed to sustain conviction). While Lomas was unable to make a positive identification of Mendez as the male robber depicted in the photographs, Satterfield testified she knew Mendez at the time of the offense and identified the male robber in the photographs as Mendez. Accordingly, because Satterfield's identification testimony identified Mendez as the male robber in the photographs taken during the robbery, the testimony tended to make it more probable that Mendez was the male robber. *See* TEX. R. EVID. 401, 402. Therefore, the testimony was relevant. *See id.* Accordingly, the trial court did not abuse its

discretion in admitting the evidence as relevant. *See McCarty*, 257 S.W.3d at 239; *Montgomery*, 810 S.W.2d at 386, 389.

### *Bolstering*

In his second issue, Mendez contends Satterfield's identification testimony constituted improper bolstering. According to Mendez, Satterfield's testimony added no substantive evidence and was offered for the sole purpose of bolstering the State's position that the photographs taken from the cab depicted Mendez.

"Bolstering occurs when one item of evidence is improperly used by a party to add credence or weight to some earlier unimpeached piece of evidence offered by the same party." *Cohn v. State*, 849 S.W.2d 817, 819 (Tex. Crim. App. 1993). Any evidence offered with the sole purpose to "convince the factfinder that a particular witness or source of evidence is worthy of credit, without substantively contributing 'to make the existence of [a] fact that is of consequence to the determination of the action more or less probable that it would be without the evidence'" constitutes improper bolstering. *Id*. (quoting. TEX. R. EVID. 401). On the other hand, evidence that corroborates another witness's testimony and has a further tendency to establish a fact of consequence is not considered bolstering. *Id*.

In this case, Satterfield's identification testimony was not offered with the sole purpose to increase the credibility of another witness or source of evidence. *See id*. Here, Satterfield's identification testimony substantively contributed to make the existence of a fact, i.e., that Mendez was the male robber depicted in the photographs, more likely. *See id.* Additionally, Satterfield's evidence was offered in an effort to corroborate Herrera's accomplice-witness testimony that Mendez was the male robber depicted in the photographs. *See id*.; *see also* TEX. CODE CRIM. PROC. ANN.

art. 38.14. Because Satterfield's identification testimony was substantive and offered to corroborate Herrera's testimony, we hold it did not constitute improper bolstering. *See id*. We overrule Mendez's second issue.

### *Texas Rule of Evidence 403*

In his third issue, Mendez contends Satterfield's identification testimony was more prejudicial than probative, and therefore, inadmissible under Texas Rule of Evidence 403. Mendez asserts the trial court did not conduct a proper rule 403 analysis, and as a result, it erroneously admitted Satterfield's testimony. Additionally, Mendez contends the evidence was more prejudicial than probative because the jurors could have deduced whether Mendez was the male robber by looking at the photographs themselves.

Texas Rule of Evidence 403 allows for the exclusion of otherwise relevant evidence when its probative value "is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." TEX. R. EVID. 403. Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. *Montgomery*, 810 S.W.2d at 389. Rule 403 requires evidence to be excluded only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value. *Joiner v. State*, 825 S.W.2d 701, 708 (Tex. Crim. App. 1992). A proper rule 403 analysis includes consideration of the following factors in balancing the probativeness of the evidence against the danger of undue prejudice: (1) the potential of the evidence to impress the jury in some irrational, but nevertheless indelible way; (2) the time the proponent needs to develop the evidence; and (3) the proponent's need for the evidence. *Montgomery*, 810 S.W.2d at 389-90. We review a trial court's

determination to admit evidence under rule 403 under an abuse of discretion standard. *See McCarty*, 257 S.W.3d at 239; *Montgomery*, 810 S.W.2d at 389-90.

There is nothing in the record to indicate the trial court conducted an improper rule 403 analysis. Mendez asserts the trial court's statement, "I think the State needs this witness[,]" suggests the trial court admitted the evidence simply to help the State prove its case rather than because the evidence was more probative than prejudicial. We disagree.

With regard to the first factor of a rule 403 analysis, the evidence did not possess the potential to impress the jury in some irrational way. *See Montgomery*, 810 S.W.2d at 389-90. Although the evidence does injure Mendez's case, there is nothing in the record to indicate the evidence had an undue tendency to cause the jury to make a decision on an improper basis, such as an emotional one. *Cohn*, 849 S.W.2d 817, 820 (Tex. Crim. App. 1993) (specifying unfair prejudice is not evidence that simply injures opponent's case). Instead, the evidence corrborated Herrera's testimony that the male robber in the photograph was Mendez. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. Additionally, the amount of time the State used to develop Satterfield's testimony was minimal as the testimony covers only four pages of the multi-volume reporter's record. *See Montgomery*, 810 S.W.2d at 389-90. Lastly, when looking at the State's need for the evidence, the State needed to corroborate Herrera's accomplice-witness testimony by some other evidence tending to connect Mendez with the commission of the robbery, and Lomas's testimony was insufficient because Lomas was unable to positively identify Mendez. *See* TEX. CODE CRIM. PROC. ANN. art. 38.14. Accordingly, the State's need for Satterfield's identification testimony as corroborating evidence increased its probative value over its prejudicial effect. *See Montgomery*, 810 S.W.2d at 389-90. After reviewing

the factors, we hold the probative value of Satterfield's identification testimony was not substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 403.

We hold the trial court conducted a proper rule 403 analysis, and did not abuse its discretion in finding the evidence was more probative than prejudicial. *See McCarty*, 257 S.W.3d at 239; *Montgomery*, 810 S.W.2d at 386, 389. Accordingly, we overrule Mendez's third appellate issue.

### *Sixth Amendment Right of Confrontation*

In his fourth issue, Mendez contends the trial court's admission of Satterfield's identification testimony denied him his Sixth Amendment right of confrontation because he could not effectively cross-examine Satterfield without opening the door to his criminal history. Mendez contends he was strictly limited in what questions he could ask Satterfield because any questions regarding Satterfield's relationship with him, which he asserts would have exposed Satterfield's potential for bias, would have opened the door for the State to introduce evidence regarding his prior conviction.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to confront a witnesses testifying against him. U.S. Const. amend. VI; *Pointer v. Texas*, 380 U.S. 400 (1965). A trial court violates a defendant's right of confrontation if it denies or improperly limits appropriate cross-examination. *Delaware v. Van Arsdale*, 475 U.S. 673, 680, 684 (1986); *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). The Confrontation Clause and opportunity to cross-examine a witness exist to ensure fairness in criminal proceedings. *Offor v. Scott*, 72 F.3d 30, 33-34 (5th Cir.1995). Through cross-examination, a defendant can test the believability of a witness and the truth of his or her testimony. *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974).

The right to cross-examine a witness extends to any matter that could expose the witness's credibility. *Virts v. State*, 739 S.W.2d 25, 28 (Tex. Crim. App. 1987). "The right of an accused to cross-examine a testifying State's witness includes the right to impeach the witness with relevant evidence that might reflect bias, interest, prejudice, inconsistent statements, traits of character affecting credibility, or evidence that might go to any impairment or disability affecting the witness's credibility." *Sherman v. State*, 20 S.W.3d 96, 101 (Tex. App.—Texarkana 2000, no pet.) (citing *Virts*, 739 S.W.2d at 28; *Alexander v. State*, 949 S.W.2d 772, 774 (Tex. App.—Dallas 1997, pet. ref'd)). A defendant's right of confrontation may be violated when a trial court expressly denies or improperly limits that defendant the opportunity to cross-examine a witness to expose that witness's bias. *See, e.g.*, *Van Arsdale*, 475 U.S. 673 at 680, 684 (1986) (highlighting that it is not within trial court's discretion to prohibit defendant from engaging in appropriate cross-examination to expose witness's bias); *Hurd v. State*, 725 S.W.2d 249, 253 (Tex. Crim. App. 1987) (holding it was error for trial court to limit appellant's cross-examination of witness to expose racial bigotry bias); *Sherman*, 20 S.W.3d at 101 (holding trial court's failure to allow defendant to cross-examine witness for impeachment purposes denied defendant fair trial).

However, this is not a case where the trial court denied or limited a defendant's right to cross-examine a witness. Rather, Mendez claims the circumstances of his relationship with the witness limited his right to cross-examination. Thus, the issue here is whether a trial court violates a defendant's right of confrontation when it allows a defendant the opportunity to cross-examine a witness, but that defendant chooses not to cross-examine the witness on certain issues for fear that his cross-examination may open the door to detrimental evidence.

Mendez contends that although the trial court allowed him to cross-examine Satterfield, he could not effectively cross-examine her and expose her bias because his questions would have opened the door to his past criminal record. Mendez argues Satterfield's potential biases stemmed from her relationship to Mendez as his parole officer, and her biases included, but were not limited to, her employment in law enforcement, her prior history with him, and the possibility that the outcome of his trial would have some bearing on the outcome of her supervision of him as his parole officer. Mendez contends he was unable to ask questions regarding Satterfield's relationship to Mendez in order expose these biases for fear that such line of questioning would risk opening the door to his prior criminal record, and as a result, he was limited to asking only questions regarding how many times she had personally seen him and whether she had been in his home.

Unlike the cases cited above where the defendant's right to confrontation was violated because the trial court expressly denied or improperly limited the defendant's opportunity to cross-examine a witness, the trial court did not expressly deny or limit Mendez's opportunity to cross-examine Satterfield. Rather, Mendez chose not to cross-examine Satterfield on certain issues for fear of what her testimony might expose. We find no authority for the proposition that a trial court violates a defendant's right to confrontation in such a circumstance, and Mendez does not cite any. In applying the standard set out above, we cannot conclude the trial court abused its discretion by admitting the evidence and thereby allegedly violating Mendez's right to confrontation, given the court did not deny or in any way limit Mendez's Sixth Amendment right of confrontation.

However, even assuming the trial court violated Mendez's right to confrontation, Mendez has not demonstrated harm. If the trial court's action was error, the error is constitutional error reviewed under rule 44.2(a). *See* TEX. R. APP. P. 44.2(a); *Johnson*, 967 S.W.2d at 417 (defining

constitutional error as error that directly offends against United States or Texas Constitutions); *Sherman*, 20 S.W.3d 101-102 (reviewing violation of right to confrontation under constitutional harm analysis). Thus, we must reverse the conviction unless we determine beyond a reasonable doubt that the error did not contribute to the conviction or punishment. *See* Tex. R. App. P. 44.2(a). A rule 44.2(a) analysis requires us to examine the source and nature of the error, whether or to what extent it was emphasized by the State, its probable collateral implications, how much weight a juror would probably place upon the error, and whether declaring the error harmless would encourage the State to repeat it with impunity. *See Harris v. State*, 790 S.W.2d 568, 587 (Tex. Crim. App. 1989) (outlining factors considered for a rule 44.2(a) harm analysis).

In this case, the source of the error was the State's offering, and the trial court's admitting, into evidence the identification testimony of Satterfield. The nature of the error stemmed from Mendez's alleged inability to effectively cross-examine Satterfield regarding her relationship to him as his parole officer for fear of opening the door to his criminal record. Nowhere in the record did the State comment on the quality of Mendez's cross-examination of Satterfield. Additionally, in consideration of the weight a juror would probably place on the error, we look to the other evidence of Mendez's guilt. The record reflects the jury heard Herrera describe how she and Mendez committed the robbery. During her testimony, Herrera identified herself and Mendez as the male and female robbers in the admitted photographic evidence. Additionally, the jury heard Lomas describe the robbery, and although Lomas was not able to positively identify anyone in the photographs or at the trial, including Herrera, Lomas testified Mendez looked like the man who committed the robbery. The jury also saw the admitted photographs depicting a male and female robber and had the opportunity to view the photographs and Mendez and determine whether he was

the robber.  In light of these factors, any error in admitting Satterfield's testimony would not have materially affected the jury's decision-making process, and therefore, we can conclude beyond a reasonable doubt that the error did not contribute to the conviction or punishment.  *See* TEX. R. APP. P. 44.2(a).  Accordingly, we overrule Mendez's fourth issue.

### *Fifth Amendment Right Against Self-Incrimination*

In his final issue, Mendez alleges his Fifth Amendment right against self-incrimination was violated when the trial court suggested he could stipulate to his identity in the photograph as an alternative to cross-examining Satterfield.  According to Mendez, the suggestion to stipulate shocks the conscience because the stipulation would amount to an admission of identity, an incriminating and disputed fact.

The State argues Mendez failed to preserve this complaint for our review.  We agree with the State.  Mendez's trial objection does not comport with his complaint on appeal.  To preserve an issue for appeal, an appellant must object "in a timely and specific manner at trial." *Thomas v. State*, 723 S.W.2d 696, 700 (Tex. Crim. App. 1986); TEX. R. APP. P. 33.1(a) (requiring appellant to make timely and specific objection at trial to preserve issue for appeal).  An objection at trial is necessary in order to "inform the trial judge of the basis of the objection and afford him or her an opportunity to rule on it, and . . . afford opposing counsel an opportunity to remove the objection or supply other testimony." *Thomas*, 723 S.W.2d at 700.  Additionally, the objection at trial must comport with the issue presented on appeal.  *Turner v. State*, 805 S.W.2d 423, 431 (Tex. Crim. App. 1991); *Hernandez v. State*, 171 S.W.3d 347, 358 (Tex. App.—Houston [14th Dist.] 2005, pet. ref'd.) (explaining that objection must alert trial court to specific complaint).

At trial, Mendez objected to Satterfield's identification testimony on several grounds, including relevancy, unfair prejudice, denial of his right to cross-examination, and bolstering. Although Mendez contends the trial court's suggestion to stipulate compelled him to incriminate himself, nowhere in the record does Mendez object to the trial court's suggestion on self-incrimination grounds. Instead, Mendez states his constitutional objection as, "It's his right to cross-examination, confrontation of witness. It is the constitutional objection[,]" which we specifically addressed in issue four of this appeal. Because none of Mendez's objections amount to a Fifth Amendment claim, Mendez did not preserve this claim, and we overrule his final issue on appeal. *See* Tex. R. App. P. 33.1(a)(1); *Turner*, 805 S.W.2d at 431; *Hernandez*, 171 S.W.3d at 358.

## CONCLUSION

Based on the foregoing, we affirm the trial court's judgment.

Marialyn Barnard, Justice

DO NOT PUBLISH