

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1097-08

**CHRISTOPHER IRBY, Appellant**

**v.**

**THE STATE OF TEXAS**

## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
## IN CAUSE NO. 05-07-00958-CR FROM THE FIFTH COURT OF APPEALS
## DALLAS COUNTY

**Holcomb, J., *filed a dissenting opinion, in which* WOMACK
*and* HERVEY, JJ., *joined.***

## O P I N I O N

    I believe that we cast a dark shadow on the constitutional right of confrontation by requiring

a defendant to establish the kind of "logical relationship" the majority requires before allowing cross-

examination of a juvenile witness on his pending probationary record to show his possible bias or

motive in testifying for the same prosecutorial authority which also supervises his probation. The

majority, in my view, misapplies *Davis v. Alaska*, 415 U.S. 308 (1974), which clearly held that the

constitutional right to question a juvenile witness regarding his pending probationary status trumps

any State interest in protecting such juvenile offenders.[1]  Denying the defendant any opportunity to cross-examine a critical juvenile witness regarding his possible bias stemming from his probationary relationship with the State constitutes a denial of the right to effective cross-examination.[2]

I.  *Davis v. Alaska*

A.  *The Scope of the Holding*

The majority focuses on the fact that the witness in *Davis* was on probation for an offense that made him a likely suspect for the offense with which Davis had been charged.  But the Supreme Court stated at the very beginning of its opinion:

> We granted certiorari in this case to consider whether the *Confrontation Clause* requires that a defendant in a criminal case be allowed to impeach the credibility of a prosecution witness by cross-examination directed at possible bias deriving from the witness' probationary status as a juvenile delinquent when such an impeachment would conflict with a State's asserted interest in preserving the confidentiality of juvenile adjudications of delinquency.

---

[1]

*See, e.g.,* 415 U.S. at 320 ("The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness.").

[2]

*See, e.g., id.* at 318:

> While counsel was permitted to ask [the witness] *whether* he was biased, counsel was unable to make a record from which to argue *why* [the witness] might have been biased or otherwise lacked that degree of impartiality expected of a witness at trial. On the basis of the limited cross-examination that was permitted, the jury might well have thought that defense counsel was engaged in a speculative and baseless line of attack on the credibility of an apparently blameless witness or, as the prosecutor's objection put it, a "rehash" of prior cross-examination.  On these facts it seems clear to us that to make any such inquiry effective, defense counsel should have been permitted to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness.  Petitioner was thus denied the right of effective cross-examination.

(Emphasis in original.)

*Id.* at 309. Thus, the issue that the Supreme Court granted in *Davis* was the same as the one before us, and there is nothing in *Davis* to suggest that the Court decided less than it had agreed to decide, limiting its decision to the bare facts of the case before it. The Court took those facts into consideration, of course. But it was careful to always refer to the facts in conjunction with the larger issue before it. These references show that the Court was concerned not only with the fact that the witness in *Davis* was likely to become a suspect himself for the offense with which Davis was charged, but also with the fact that the witness was on probation.[3] The Court made it quite clear that it took a separate account of the fact that the witness was on probation, in reaching its decision.

The Supreme Court itself has interpreted *Davis* as I do. *See, e.g., Delaware v. Van Arsdall*, 475 U.S. 673 (1986). In recounting the *Davis* facts, the Court stated, "[t]he defense sought to suggest that Green may have slanted his account in the State's favor *either* to shift suspicion away from himself *or* to avoid revocation of probation for failing to 'co-operate.'" *Id.* at 683 (emphasis added) (citing *Davis*, 415 U.S. at 310-11). This "either… or…" language contradicts any assertion that the *Davis* holding is applicable only if the witness himself is likely to be suspected of the offense with which the defendant is charged. On the contrary, the Court's language in cases following *Davis* makes it clear that the *Davis* rule applies whether the witness is likely to become a suspect *or* might be just trying to avoid revocation of probation. In either case, it is error to exclude the impeachment evidence when a witness's "testimony [is] 'crucial' and . . . there [is] a 'real possibility' that pursuit of the excluded line of impeachment evidence would [do] '(serious) damage to the strength of the

---

[3] For example, the Court stated, "*Not only* might Green have made a hasty and faulty identification of petitioner to shift suspicion away from himself as one who robbed the Polar Bar, *but* Green might have been subject to undue pressure from the police and made his identifications under fear of possible probation revocation." *Id.* at 311 (emphasis added).

State's case.'" *Id.* (quoting *Davis*, 415 U.S. at 319).

The above reasoning applies with greater force in the present case in which there was no physical evidence nor any eyewitnesses to corroborate W.P.'s allegations against appellant, and we have only W.P.'s own word that appellant had made any sexual advances towards him. As such, W.P. was a "crucial witness," *Davis*, 415 U.S. at 310, and anything likely to impact his credibility was critical to the State's case. *Id.* at 319 ("Serious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry."). *See also Van Arsdall*, 475 U.S. at 683 (same). Under these circumstances, *Davis* mandated that the defense should have been allowed to cross-examine W.P. about his probation, that relationship with the State itself being the very source of his possible bias or motive to falsely testify against appellant in the hope of pleasing the State which supervised his own probation. *See Davis*, 415 U.S. at 319 ("Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record -- if the prosecution insisted on using him to make its case -- is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness.").[4]

_____

[4]

It should be noted that the Fifth Circuit interprets *Davis* even more broadly than I do in the present case. *See, e.g., Greene v. Wainwright*, 634 F.2d 272 (5th Cir. 1981). In *Greene*, the defendant Greene had not even articulated a basis for wanting to impeach the witness Kennerly. The Court felt free to postulate for him, stating:

We can conceive of at least two theories of impeachment that defendant might have proposed had he been granted his constitutional rights. [For example], he might have argued that Kennerly was testifying to avoid prosecution for other illegal activities. "It is especially important in a case where a witness or an accomplice may have substantial reason to cooperate with the government that a defendant be permitted to search for an agreement between the government and the

(continued...)

*B.  General Impeachment*

The majority discusses at some length the prohibition in most jurisdictions against impeachment of a witness's general credibility.  *See* Maj. Op. at 14-16.  It seems to consider the cross-examination on a witness's probation itself as impeachment of his general credibility unless the record shows that the witness was on probation for an offense similar to the one for which the defendant had been charged.  But, as the Supreme Court explained:

> The introduction of evidence of a prior crime is . . . a general attack on the credibility of the witness.  A more particular attack on the witness' credibility is effected by means of cross-examination directed toward revealing possible *biases, prejudices, or ulterior motives* of the witness as they may relate directly to issues or personalities in the case at hand.

*Davis*, 415 U.S. at 316 (emphasis added).

In other words, cross-examining the witness on his pending probationary record is not a general, but rather a "particular attack" in the sense that it is specifically "*directed* toward revealing *possible* biases, prejudices, or ulterior motives of the witness as they may relate *directly* to issues or personalities in the case at hand."  *Id.* (emphasis added).  Thus, the focus is not on the witness's character (the so-called propensity evidence, *i.e.*, "once a criminal, always a criminal," so to speak), but rather on the relationship between the witness and the State, and the " possible biases, prejudices,

---

[4](...continued)
witness."  *United States v. Crumley*, 565 F.2d 945, 949 (5th Cir. 1978).  Whether or not such a deal existed is not crucial.  *United States v. Mayer*, 556 F.2d 245, 249 (5th Cir. 1977).  What counts is whether the witness may be shading his testimony in an effort to please the prosecution.  "A desire to cooperate may be formed beneath the conscious level, in a manner not apparent even to the witness, but such a subtle desire to assist the state nevertheless may cloud perception."  *Burr v. Sullivan*, 618 F.2d 583, 587 (9th Cir. 1980).  *See United States v. Onori*, 535 F.2d 938, 945 (5th Cir. 1976).

*Id.* at 276.

or ulterior motives" that the witness may have by reason of that relationship in testifying for the State, because the State is also one of the "personalities [*i.e.,* a party] in the case at hand." *Id.*

The Supreme Court made this point even clearer when it stated:

> [P]etitioner's counsel made it clear that he would not introduce Green's juvenile adjudication as a general impeachment of Green's character as a truthful person but, rather, to show *specifically* that at the same time Green was assisting the police in identifying petitioner he was on probation for burglary. From this petitioner would seek to show -- or at least argue -- that Green acted out of fear or concern of possible jeopardy to his probation.

*Id.* at 311 (emphasis added).

As the Court added, "[t]he partiality of a witness is subject to exploration at trial, and is '*always* relevant as discrediting the witness and affecting the weight of his testimony.'" *Id.* at 316 (emphasis added) (citation omitted). This partiality, once again, stems from the relationship between the witness and the State, having in effect nothing to do with the particular basis of that relationship, *i.e.*, the nature of the offense for which the witness is on probation. Rather, it is the relationship itself which raises questions about the witness's possible partiality to the State and his possibly questionable motives in testifying for that State; and, according to the Supreme Court, it has always "recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." *Id.* (citation omitted).

*C. Protection of Juvenile records*

The majority states,

> Texas, like other states, has an important interest in "protecting the anonymity of juvenile offenders[.]" Our Family Code and Rules of Evidence explicitly protect that anonymity. To hold that any juvenile who happens to be on probation at the time that he also is the victim of a crime or a witness in a criminal proceeding automatically loses that privacy protection is not required by the constitution or by common sense.

Maj. Op. at 23 (citations omitted). I agree and respect that a juvenile's prior juvenile adjudication ordinarily should not be used to attack the juvenile's credibility in either a civil or criminal trial. Because the complainant in this case was on deferred probation, he could not be impeached with the *offense* for which he was on probation, since there was no final conviction. Also, the details of that offense could not be revealed. But the Rules of Evidence specifically provide an exception to the above rules in cases where evidence of juvenile adjudications is "required to be admitted by the Constitution of the United States or Texas." *See* Tex. R. Evid. 609(d). The exception in the present case is mandated by the Supreme Court's decision in *Davis v. Alaska*. In fact, the majority's argument, in the above quote, is quite similar to the one that was offered by the State in *Davis*. *See* 415 U.S. at 319 ("[t]he claim is made that the State has an important interest in protecting the anonymity of juvenile offenders and that this interest outweighs any competing interest this petitioner might have in cross-examining Green about his being on probation."). But the Supreme Court summarily dismissed that claim, stating:

> [P]etitioner sought to introduce evidence of Green's probation for the purpose of suggesting that Green was biased and, therefore, that his testimony was either not to be believed in his identification of petitioner or at least very carefully considered in that light. Serious damage to the strength of the State's case would have been a real possibility had petitioner been allowed to pursue this line of inquiry. In this setting we conclude that the right of confrontation is paramount to the State's policy of protecting a juvenile offender. Whatever temporary embarrassment might result to Green or his family by disclosure of his juvenile record -- if the prosecution insisted on using him to make its case -- is outweighed by petitioner's right to probe into the influence of possible bias in the testimony of a crucial identification witness.

*Id.* The same situation exists in the case before us. Appellant "sought to introduce evidence of [W.P.'s] probation for the purpose of suggesting that [W.P.] was biased and, therefore, that his testimony was either not to be believed . . . or at least very carefully considered in that light." *Id.*

"Serious damage to the strength of the State's case would have been a real possibility had [appellant] been allowed to pursue this line of inquiry." *Id.* "In this setting," as the Supreme Court concluded, "the right of confrontation is paramount to the State's policy of protecting a juvenile offender." *Id.*

As the Court further emphasized,

The State's policy interest in protecting the confidentiality of a juvenile offender's record cannot require yielding of so vital a constitutional right as the effective cross-examination for bias of an adverse witness. The State could have protected Green from exposure of his juvenile adjudication in these circumstances by refraining from using him to make out its case; the State cannot, consistent with the right of confrontation, require the petitioner to bear the full burden of vindicating the State's interest in the secrecy of juvenile criminal records.

*Id.* at 320. Again, the same is true in the present case. In fact, this reasoning applies with even greater force in this case. Davis was convicted of burglary and grand larceny. *Id.* There were numerous lines of investigation available to the police, which could have provided the State with the necessary evidence, short of using Green's testimony, to prosecute Davis. But, given the nature of the allegations in the present case, W.P.'s testimony was the only possible evidence that the State could have obtained to prosecute appellant. The bottom line is that appellant was sentenced to life imprisonment based on the testimony of this one witness. Thus, W.P. was, if anything, an even more "crucial witness" for the State than Green was in *Davis*. *Id*. at 310. As such, his credibility was even more critical than that of Green; and appellant was, therefore, entitled to at least as much latitude in his cross-examination of W.P. about W.P.'s possible source of bias as Davis was provided by the Supreme Court under the protection of the Confrontation Clause.

*D.  The Defense Theory*

The majority discusses at length the merits of the defense theory.  *See* Maj. Op., Section III, at 24-27.  According to the Supreme Court, however, it is within the jury's exclusive province to

determine the credibility of the purported defense:

> We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted [the defense's] line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided "a crucial link in the proof . . . of petitioner's act." *Douglas v. Alabama*, [380 U.S. 415, 419 (1965)]. The accuracy and truthfulness of Green's testimony were key elements in the State's case against petitioner. The claim of bias which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of Green's vulnerable status as a probationer, *cf. Alford v. United States*, 282 U.S. 687 (1931), as well as of Green's possible concern that he might be a suspect in the investigation.

415 U.S. at 317-18 (footnote omitted).[5]

In the present case, appellant was completely denied an opportunity to present to the jury his defense theory based on W.P.'s probationary record. As the above quote shows, it was for the jury – not the trial judge, nor this Court – to evaluate the merits of that theory. This reasoning is perfectly in line with the *Davis* Court's holding that the defendant is allowed to cross-examine a "crucial witness" about his probationary record because of the relationship such probation establishes between him and the State, which in turn raises a question about his partiality in testifying for the

---

[5] The Fifth Circuit interprets the above passage from *Davis* the same way as I do. *See, e.g. Greene*, 634 F.2d at 276:

> We do not know whether, on cross-examination, petitioner would have elicited testimony supporting either of these theories [that the Court had assumed the defense might have pursued]. Nor do we know whether, even had such testimony been elicited, the jury would have been persuaded to disbelieve [the witness]. The point is that it was for the jury to make this determination.

(Quoting and citing *Davis*, 415 U.S. at 317-18). Prior decisions from this Court have reached the same conclusion under similar circumstances. *See, e.g., Hurd v. State*, 725 S.W.2d 249, 253 (Tex. Crim. App. 1987) ("It was not necessary for counsel to show the trial court that his cross-examination of the witness would affirmatively establish the facts he sought to prove.").

State which also supervises him as a probationer. The jury, and only the jury, then takes that relationship into consideration, as it would take any other element of a witness's credibility, in deciding how much weight to give to that witness's testimony. Thus, according to the Supreme Court, the Confrontation Clause entitles the defendant an opportunity to present his defense theory directly to the jury under such circumstances.

Moreover, as the above quote shows, *Davis* did not require that appellant's defense theory should be so persuasive that we could be sure it would have been accepted by the jury. *See id.* at 317. It required only that the trial court give appellant an opportunity to fully present his theory, and to present it directly to the jury itself, who could then "make an informed judgment as to the weight to place on" the testimony of the witness in question, in light of that theory. *Id.* As the majority admits, there were "numerous inconsistencies and contradictions in the witnesses' testimony." Maj. Op. at 8. Given that most of the State's own witnesses contradicted W.P.'s account of events in which they had themselves participated, and given that the jury itself had difficulty believing W.P.'s story,[6] there was "a real possibility" that the State's case might have suffered "[s]erious damage" had appellant been allowed to "pursue []his line of inquiry." 415 U.S. at 319. It was, therefore, a violation of appellant's confrontation right to completely prevent him from cross-examining the one critical witness against him on a subject that he so desperately sought to examine throughout the

---

[6] The jury sent three notes to the Court, one of which clearly stated: "We are at an impasse that cannot be resolved. Our vote is 11 to 1." The Court tried to resolve this "impasse" by giving the jury an *Allen* (*Allen v. United States*, 164 U.S. 492 (1896)) charge, only to receive yet another note from the jury requesting the trial court to provide it with "[W.P.'s] testimony describing the actual sequence of events of the sexual acts between the defendant and [W.P.]," and stating that the members of the jury had "questions" about this testimony and that there was a "dispute" among them "regarding the details of these events."

trial, to help him answer that one critical question which the State repeatedly asked during its closing arguments, and that the majority in the present case likewise emphasizes in its opinion: why would W.P. lie anyway? In other words, appellant had the right to answer that one critical question which no doubt sealed his fate.

In the present case, we know W.P. was placed on *adult* deferred probation (about which the jury never learned) for aggravated assault with a deadly weapon. This occurred shortly before he made the initial outcry accusing appellant of the offense at issue in this case. The jury heard evidence relating to W.P.'s use of alcohol and controlled substances at appellant's house, all of which in possible violation of his adult probation. Under these circumstances, appellant should have been allowed to cross-examine W.P. to show how the State was treating these violations to establish W.P.'s possible bias or even motive to make the initial accusation against appellant.

II. *The Post-*Davis *Texas Progeny*

The majority states that there must be "some logical relationship" between a witness's "'vulnerable relationship'" with the State by virtue of his probation, and that "witness's potential motive for testifying as he does" for the State. Maj. Op. at 16. But we have stated in the past that such a logical relationship stems from the very fact that the witness is testifying for the same entity, the State, which also supervises his probation. *See, e.g., Woods v. Texas*, 152 S.W.3d 105 (Tex. Crim. App. 2004):

> The proponent of evidence to show bias must show that the evidence is relevant. The proponent does this by demonstrating that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party. *We have found a nexus* when a witness has been indicted or *is serving a period of community supervision*. In such cases, the witness is placed in a vulnerable position and may have a motive to testify in favor of the State.

*Id.* at 111 (emphasis added) (citations omitted).

*A. Carpenter*

The majority states that "[e]vidence that a witness is on probation, is facing pending charges, or has a prior juvenile record is not relevant for purposes of showing bias or a motive to testify absent some plausible connection between that fact and the witness's testimony." Maj. Op. at 18. The majority relies on *Carpenter v. State*, 979 S.W.2d 633 (Tex. Crim. App. 1998), as "a prime example of when and why a logical connection is necessary." *Id.* But *Carpenter* is clearly distinguishable from the present case.

In *Carpenter*, the defense sought to cross-examine the State's witness regarding federal conspiracy charges then pending against him. 979 S.W.2d at 633-34. The majority held that, "[f]or the evidence to be admissible, the proponent must establish some causal connection or logical relationship between the pending charges and the witness' 'vulnerable relationship' or potential bias or prejudice for the State, or testimony at trial." *Id.* at 634. But the "causal connection" that the majority mentioned, and failed to find, in *Carpenter* was the fact that Carpenter sought to impeach the witness's credibility at a State trial with the federal charges then pending against that witness. As the Court stated:

> Appellant has not established a causal connection or logical relationship between the pending federal charges and the witness' testimony at trial. Appellant does not argue, and the record does not demonstrate, why prosecution by the *federal* government for theft and conspiracy to possess and distribute controlled substances would tend to show that the witness' testimony in this unrelated *state* prosecution for tampering with government documents might be biased.

*Id.* at 635 (emphasis added). In other words, there was no "causal connection" between the charges against the witness and his testimony at trial because it was the federal government, and not the State

for whom he was testifying, that was going to prosecute him on the impending charges. Thus, he was in a "vulnerable relationship" with the federal government, but not with the State. The federal government stood to gain nothing from, and he in turn stood to gain nothing from the federal government for, his testimony for the State.[7]

A simple example illustrates the point. If John slaps his sister, Suzy, and Suzy threatens to tell their parents, John cannot hope to appease her by bringing some ice cream for his other sister, Mary. But he might persuade Suzy not to tell their parents by promising to bring some ice cream for her if she did not tell. Substitute John for the witness, Suzy for the federal government, and Mary for the State, and we have the *Carpenter* scenario.

In short, there was no realistic basis to attack the witness's testimony for one prosecutorial authority because of the impending charges against him from the other. As the concurrence explained, "appellant's right to cross-examine a State's witness concerning pending charges against the witness is implicated *only* where the pending charges have been brought by the *same prosecutorial authority* (or, perhaps, another *nonfederal* prosecutorial authority in Texas) which is

_____

[7] The Court had in effect presumed that the possibility of the federal government's treating the witness more leniently in light of his testimony for the State was remote because the State and the federal government were two separate prosecutorial authorities, and it was the State, not the federal government, that actually benefitted from the witness's testimony. Nevertheless, the Court indicated that it might have still allowed Carpenter to impeach the witness with the impending federal charges if she had produced at least some evidence to overcome the Court's presumption. Thus, the Court noted, even though Carpenter asserted that "'it is possible the witness believed his testimony in this case would be of some benefit,'" she failed to "provide evidence to support her assertion." 979 S.W.2d at 635. But, in the absence of such evidence, as the concurrence noted, "[t]he mere possibility the witness may derive a benefit [from the federal government] by testifying in a State prosecution on the State's behalf does not implicate the Confrontation Clause, based on any reasonable interpretation of the Supreme Court's holding in *Davis v. Alaska*." *Id.* at 636 (Mansfield, J., concurring).

prosecuting appellant." *See id.* at 635 (Mansfield, J., concurring) (emphasis added) (citations omitted). Thus, the holding in *Carpenter* was grounded primarily on the fact that there were two separate prosecutorial authorities at work in that case. That is simply not the case before us.

*B. Carroll*

The majority asserts that "Judge Keller's dissent in [*Carroll v. State*, 916 S.W.2d 494 (Tex. Crim. App. 1996)] laid the groundwork for the Court's reasoning in *Carpenter*." Maj. Op. at 19 n.42. But, while the *Carpenter* Court repeatedly referred to the *Carroll* majority, it did not even mention the *Carroll* dissent. Moreover, there is nothing in *Carpenter* to indicate that we limited the *Carroll* decision in any way. If anything, it was Judge Meyers' concurrence in *Carroll* that laid the groundwork for his majority opinion in *Carpenter*. He wrote separately in *Carroll* only to make the following comment:

> In this case the charges pending against the State's witness originated in the same jurisdiction and were brought by the identical authorities as those for which the appellant stands accused. I therefore agree with the decision of our lead opinion to allow the defendant to use these charges for impeachment on cross-examination of this witness. However, *in future contexts, should these charges emanate from another jurisdiction or authority*, I would hold that release of the information to the jury is subject to a discretionary ruling of the trial court under Rule 403 of the Texas Rules of Criminal Evidence.

916 S.W.2d at 501 (Meyers, J., concurring) (emphasis added). *Carpenter* involved precisely the scenario of the two different prosecutorial authorities that Judge Meyers had mentioned in his concurrence in *Carroll*; and he reaffirmed the position he had taken in *Carroll* as he authored the majority opinion in *Carpenter*, affirming the court of appeals' holding that Carpenter had been properly excluded from cross-examining the State's witness about pending charges from one prosecutorial authority when testifying for an altogether different prosecutorial authority.

C. *Maxwell*

The majority seeks to overrule *Maxwell v. State*, 48 S.W.3d 196 (Tex. Crim. App. 2001), "to the extent that [it]is inconsistent with *Carpenter*." *See* Maj. Op. at 22. But a careful examination of *Maxwell* shows that *Carpenter* was not even applicable to that case, which is probably why this Court did not even mention *Carpenter* in *Maxwell*.

In *Maxwell*, appellant was charged with aggravated robbery. At trial, he wanted to introduce evidence that Tiger, a key witness for the State, was on deferred adjudication probation for possession of a controlled substance. Appellant also wanted to introduce evidence that Tiger had been convicted of another crime during the course of that probation. The State objected, and the trial court did not allow any of the above evidence to be admitted before the jury. We granted appellant's petition to consider whether "'the trial court committed reversible error in failing to permit appellant to impeach a key state witness by showing that at the time of trial he was serving deferred adjudication probation.'" 48 S.W.3d at 197. After examining several Supreme Court cases, including *Davis*, as well as cases from our own Court, we concluded that "[b]oth prior and later opinions from this Court and the Supreme Court have indicated that a witness's deferred adjudication probation status is sufficient to show a bias or interest in helping the State." *Id.* at 199-200 (citations omitted). We therefore held that "a defendant is permitted to cross-examine a State's witness on the status of his deferred adjudication probation in order to show a potential motive, bias or interest to testify for the State." *Id.* at 200.

In light of the above, it is clear to see that *Carpenter* was distinguishable from *Maxwell* for the same reason that it is distinguishable from the present case – because it involved two separate prosecutorial authorities: the State for which the witness sought to testify, and the federal

government which had filed the charges pending against that witness. Thus, *Carpenter* fails to support the majority's asserted justification for overruling *Maxwell*, *i.e.*, that *Maxwell* should be overruled because it is inconsistent with *Carpenter*.

The majority would like to overrule *Maxwell* because it clearly held that the fact that the witness is on probation is itself "sufficient" to allow the defense to cross-examine the witness about that probation. *Id.* But other decisions from this Court have reached the same conclusion. *See, e.g., Woods*, 152 S.W.3d at 111 ("We have found a nexus when a witness has been indicted or is serving a period of community supervision. In such cases, the witness is placed in a vulnerable position and may have a motive to testify in favor of the State."); *Carroll*, 916 S.W.2d at 500-01 ("A defendant is permitted to elicit any fact from a witness intended to demonstrate that witness' vulnerable relationship with the state"; "it is possible, even absent an agreement, that [the witness] believed his testimony in this case would be of later benefit"; "appellant did not try to cross-examine [the witness] about a specific instance of conduct . . . . Rather, appellant attempted to inform the jury that [the witness] had a vulnerable relationship with the State at the time of his testimony."). Thus, this Court would have to overrule, not only *Maxwell,* but also *Woods*, *Carroll*, *Carpenter* itself, and all the cases that have followed these decisions.

Finally, the majority cites that portion of *Callins v. State*, 780 S.W.2d 176, 196 (Tex. Crim. App. 1989) (op. on reh'g), *see* Maj. Op. at 19 n.43, that *Maxwell* implicitly overruled by disapproving of a case specifically because of its reliance on that particular portion of *Callins*. *See* 48 S.W.3d at 198. *Callins* is the only case cited by the majority that even comes close to supporting its position. Thus, by overruling *Maxwell* and relying on *Callins* for support, the majority in effect seeks to reinstate the portion of *Callins* that was overruled by *Maxwell*. While *Maxwell* relied on

at least two Supreme Court decisions (*Davis* and *Alford*) and at least three Texas cases (*Evans*, *Carroll*, and *Moreno*), *Callins* cited only *Davis*, barely discussed its application, and merely noted *Evans* as a "Cf." *See Callins*, 780 S.W.2d at 196. Thus, the majority in the present case seeks to overrule *Maxwell* – which, in my view, was a thoroughly researched, well-reasoned, almost-a-decade-old decision, devoted exclusively to the issue presently before us – and reinstate *Callins*, which does not even discuss that issue to any appreciable length. In my view, this does not constitute sound and stable jurisprudence.

\* \* \* \* \* \* \* \* \* \* \*

For all of the above reasons, I respectfully dissent.

FILED: JUNE 16, 2010.

PUBLISH